ACCEPTED
03-15-00313-CV
7078401
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/24/2015 11:25:11 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00313-CV**

IN THE COURT OF APPEALS FOR THE
THIRD JUDICIAL DISTRICT OF TEXAS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/24/2015 11:25:11 AM
JEFFREY D. KYLE
Clerk

**HERMENIA JENKINS,**
*Appellant*

**v.**

**CROSBY INDEPENDENT SCHOOL DISTRICT AND MICHAEL L.
WILLIAMS, COMMISSIONER OF EDUCATION,**
*Appellees*

On Appeal from the District Court of Travis County, Texas
200th Judicial District
Trial Court Cause No. D-1-GN-14-000619

**BRIEF OF APPELLEE CROSBY INDEPENDENT SCHOOL DISTRICT**

David B. Hodgins
State Bar No. 09775530
dhodgins@thompsonhorton.com

Amber K. King
State Bar No. 24047244
aking@thompsonhorton.com

Frances Broussard
State Bar No. 24055218
fbroussard@thompsonhorton.com

**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:  713-554-6745
Facsimile:  713-583-8245

**ATTORNEYS FOR APPELLANT CROSBY INDEPENDENT SCHOOL DISTRICT**

# IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. Hermenia Jenkins
   *Plaintiff / Appellant*

2. Kevin F. Lungwitz
   Elizabeth Poole
   The Lungwitz Law Firm, P.C.
   3005 S. Lamar Blvd.
   Austin, Texas 78704
   *Attorneys for Plaintiff / Appellant*

3. Crosby Independent School District
   *Defendant / Appellee*

4. David B. Hodgins
   Amber K. King
   Frances R. Broussard
   Thompson & Horton LLP
   3200 Southwest Freeway, Suite 2000
   Houston, Texas 77027
   *Attorneys for Defendant / Appellee CISD*

5. Michael Williams, Commissioner of Education
   *Defendant / Appellee*

6. Greg Abbott
   Daniel T. Hodge
   David C. Mattax
   David A. Talbot, Jr.
   Andrew Lutostanski
   Office of the Attorney General of Texas
   PO Box 12548, Capitol Station
   Austin, Texas 78711
   *Attorneys for Defendant / Appellee Williams*

7. Texas Elementary Principals and Supervisors Association
   *Amicus Curiae*

8. Daniel A. Ortiz
   Giana Ortiz
   The Ortiz Law Firm
   1304 West Abram St., Suite 100
   Arlington, Texas 76013
   ***Attorneys for TEPSA***

9. Texas Association of School Boards' Legal Assistance Fund
   *Amicus Curiae*

10. David P. Backus
    Ronn P. Garcia
    Underwood Law Firm, P.C.
    1111 West Loop 289
    Lubbock, Texas 79416
    ***Attorneys for TASB***

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ i

TABLE OF CONTENTS ................................................................................ iii

INDEX OF AUTHORITIES ............................................................................ v

STATEMENT OF THE CASE ...................................................................... viii

STATEMENT REGARDING ORAL ARGUMENT ........................................ ix

ISSUES PRESENTED ................................................................................... ix

STATEMENT OF FACTS ............................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................... 4

ARGUMENT AND AUTHORITIES .............................................................. 6

I.   Standard of Review ............................................................................. 6

II.  The Term Contract Nonrenewal Act .................................................... 8

III. Jenkins' Claim Did Not Involve An Expiring Term Contract And,
     Consequently, Was Not Ripe For The Commissioner's Review, as Pled. ....... 10

IV.  Assuming *Arguendo* §21.206 Applied To Jenkins' Claim, The Commissioner
     Correctly Determined that Jenkins' Reassignment from Principal to Assistant
     Principal was in the Same Professional Capacity and Legally Valid. .............. 13

     1.   *The phrase "same professional capacity" is not defined in the Texas
          Education Code; therefore, the Commissioner's interpretation must be
          afforded broad deference.* .......................................................... 13

     2.   *The Commissioner has reasonably and consistently interpreted the
          phrase "same professional capacity."* ......................................... 14

     3.   *The Commissioner has properly declared that "administrator" is a
          distinct professional capacity.* .................................................. 16

     4.   *Tex. Educ. Code §21.201(1) does not define "professional capacity"
          for purposes of §21.206.* ........................................................... 18

     5.   *The Commissioner's interpretation is entitled to deference.* ............... 21

     6.   *The Commissioner's longstanding interpretation of "same professional
          capacity" should be upheld by the doctrine of legislative acquiescence.* ..... 22

     7.   *A change from principal to assistant principal is not a* per se *change in
          professional capacity.* ................................................................. 26

8.    *The Commissioner considered the contract, compared the two positions at issue, and appropriately determined they were both within the professional capacity of administrator.* ..........................................29

9.    *Plaintiff's argument that "once a principal, always a principal" is an unsound policy for school districts in the state of Texas.* ...............................32

CONCLUSION AND PRAYER ............................................................................33

CERTIFICATE OF COMPLIANCE ....................................................................35

CERTIFICATE OF SERVICE .............................................................................35

APPENDIX ...........................................................................................................36

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Barich v. San Felipe-Del Rio Consolidated Indep. Sch. Dist.*,
 Docket No 117-R1a-484 (Comm'r Educ. 1985) .........................................*passim*

*Carpenter v. Wichita Falls Indep. Sch. Dist.*,
 Docket No. 247-3-491 (Comm'r Educ. 1993)...............................17, 19, 29, 32

*City of Austin v. Pub. Util. Comm'n*,
 146 S.W.3d 742 (Tex. App.—Austin 2004, no pet.).....................................31, 32

*Dodd v. Meno*,
 870 S.W.2d 4 (Tex.1994)..............................................................7, 14, 25, 26

*DuPont Photomasks, Inc. v. Strayhorn*,
 219 S.W.3d 414 (Tex. App.—Austin 2006, pet. denied) ...................................23

*Goodie v. Houston Indep. Sch. Dist.*,
 57 S.W.3d 646 (Tex. App.—Houston [14th Dist.] 2001, pet.
 denied).......................................................................................................6, 7

*Gustafson v. Canutillo Indep. Sch. Dist.*,
 Docket No. 113-R10-0812 at 6-13 (Comm'r Educ. 2014)........................*passim*

*Holman v. Arp Indep. Sch. Dist.*,
 Docket No. 093-R8-805 (Comm'r Educ. 2007) .........................................12, 36

*Judson Indep. Sch. Dist. v. Ruiz*,
 04-13-00706-CV, 2015 WL 1501758 (Tex. App.—San Antonio
 Mar. 31, 2015, pet. filed) ..................................................................................7

*Lehr. v. Ector County Indep. Sch. Dist.*,
 Docket No. 003-R3-0908 (Comm'r Educ. 2011) ..............................................13

*Matthews v. Scott*,
 268 S.W.3d 162 (Tex. App.—Corpus Christi 2008, no pet.)..............................6

*McCoy v. Kermit Indep. Sch. Dist.*,
 Docket No. 004-R3-0908 (Comm'r Educ. 2012).......................................*passim*

*McGilvray v. Moses*,
  8 S.W.3d 761 (Tex. App.—Fort Worth 1999, pet. denied) ..........................14, 22

*Miller v. Houston Indep. Sch. Dist.*,
  51 S.W.3d 676 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ...................7

*Mireles v. Tex. Dep't of Pub. Safety*,
  9 S.W.3d 128 (Tex.1999)..................................................................................6

*Montgomery Indep. Sch. Dist. v. Davis*,
  34 S.W.3d 559 (Tex. 2000).............................................................................6, 7

*Murillo v. Laredo Indep. Sch. Dist.*,
  Docket No. 027-R3-0108 (Comm'r Educ. 2012) .............................11, 12, 17, 36

*Pasqua v. Fort Stockton Indep. Sch. District*,
  Docket No. 011-R3-1102 (Comm'r Educ. 2004) ...................................17, 26, 37

*Perales v. Robstown ISD*,
  Docket No. 052-R10-104, 084-R-604 (Comm'r Educ. 2006)......................19, 20

*Poole v. Karnack Indep. Sch. Dist.*,
  344 S.W.3d 440 (Tex. App.—Austin 2011, no pet.).........................................7, 8

*Railroad Comm'n v. Tex. Citizens for a Safe Future & Clean Water*,
  336 S.W.3d 619 (Tex. 2011) ...........................................................................22

*Ramos v. El Paso Indep. Sch. Dist.*,
  Docket No. 002-R10-900 (Comm'r Educ. 1999)..................................17, 32, 36

*Tex. Dept. of Protective & Regulatory Servs. v. Mega Child Care, Inc.*,
  145 S.W.3d 170 (Tex. 2004) ........................................................................23, 24

*Tex. State Bd. of Dental Exam'rs v. Sizemore*,
  759 S.W.2d 114 (Tex.1988)..............................................................................6

*TGS-NOPEC Geophysical Co. v. Combs*,
  340 S.W.3d 432 (Tex. 2011) .......................................................................14, 22

*Transcon. Ins. Co. v. Crump*,
  330 S.W.3d 211 (Tex. 2010) .......................................................................23, 24

*Underwood v. West Rusk County Consolidated Indep. Sch. Dist.*,
 Docket No. 062-R3-198 (Comm'r Educ. 1998) ......................................18, 26, 37

*Wheeler v. Austin Indep. Sch. Dist.*,
 Docket No. 008-R3-1108 (Comm'r Educ. 2011) ...............................................30

*Young v. Leggett Indep. Sch. Dist.*,
 Docket No. 175-R3-898 (Comm'r Educ. 1999) ...........................................17, 32

**Statutes**

19 Tex. Admin. Code Ann. § 241.1(d) ......................................................21, 27, 31

Tex. Educ. Code Ann. § 7.057 .............................................................................ix

Tex. Educ. Code Ann. § 11.201(d)(2) ..................................................................31

Tex. Educ. Code Ann. § 11.202(b) .......................................................................27

Tex. Educ. Code Ann. § 21.046.............................................................................27

Tex. Educ. Code Ann. § 21.201(1) ...............................................................*passim*

Tex. Educ. Code Ann. § 21.201(3) .........................................................................8

Tex. Educ. Code. Ann. § 21.206(b) ...............................................................*passim*

Tex. Educ. Code Ann. § 21.210................................................................................2

Tex. Educ. Code Ann. § 21.211...............................................................................11

Tex. Educ. Code Ann. §§ 21.251 *et seq.* ..............................................................11

Tex. Educ. Code Ann. § 21.307(f).............................................................................6

Tex. Gov't Code Ann. § 2001.174..............................................................................6

**Other Authorities**

Tex. Atty. General Op. DM-27 (1991) ....................................................................27

## STATEMENT OF THE CASE

This is an appeal pursuant to section 7.057 of the Texas Education Code. On December 2, 2011, Jenkins filed a Petition for Review with the Commissioner of Education seeking a review and decision by the Commissioner that Crosby Independent School District improperly reassigned Jenkins from a principal position to an assistant principal position in violation of the Education Code and her contract. (A.R. 155-158.[1]) The Commissioner upheld the District's reassignment decision ("Commissioner's Decision"). (App'x 1.) Subsequently, on February 28, 2014, Jenkins filed an Original Petition in the 200th Judicial District of Travis County, Texas against both the District and the Commissioner seeking a reversal of the Commissioner's Decision. (C.R. 3[2].) The parties each filed trial briefs supporting their respective positions. (C.R. 71, 224, 263.) On December 4, 2014, the Honorably Amy Clark Meachum held an oral hearing, and then issued a final judgment affirming the Commissioner's Decision. (App'x 2.) Jenkins filed a motion for new trial, which was overruled by operation of law. (C.R. 378.) On May 22, 2015, Jenkins filed a notice of appeal. (C.R. 385.)

---

[1] The abbreviation "A.R." is used for the Administrative Record that is included as Joint Exhibit No. 1 of the Reporter's Record. The page numbers referenced are the TEA page numbers located at the bottom right-hand corner.

[2] The abbreviation "C.R." is used for the Clerk's Record.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because this case presents an issue of statutory interpretation for which this Court is well equipped, an issue of substantial-evidence review where more than a scintilla of supporting evidence is apparent, and an issue of contract interpretation where the contract unambiguously permits the reassignment at issue.

## ISSUES PRESENTED

Whether the Commissioner's Decision to uphold the District's reassignment of Appellant/Plaintiff from principal to assistant principal is supported by substantial evidence?

TO THE HONORABLE JUDGES OF THE COURT:

The Appellee, Crosby Independent School District, submits it's brief as follows:

## STATEMENT OF FACTS

Jenkins worked as the principal of Charles R. Drew Intermediate School within Crosby ISD from 2003 to June 2011. (A.R. 6, ¶2.) In March 2011, Jenkins' employment contract with the District was renewed, and she signed a new two-year term contract for the upcoming school years 2011-2012 and 2012-2013. (A.R. 294.) The contract stated in pertinent part the following:

1. The Board hereby agrees to employ the Employee and the Employee agrees to serve the Board by engaging in duties as assigned by the Superintendent of the Crosby Independent School District for the school years 2011-2013 with beginning and ending dates as set by the Board.
  . . .

3. It is understood and agreed by the parties to this Contract that the Superintendent of Crosby Independent School District shall have the right to reassign such duties to the Employee as Superintendent shall deem proper, and since the Employee is not employed to fill a specific position or assignment, the Superintendent may assign or reassign to other or additional duties for which he or she is professionally certified or otherwise qualified to perform.

(*Id.*)

On June 28, 2011, the Superintendent notified Jenkins of his decision to reassign her from the principal position at Drew Intermediate to the assistant principal position at Crosby High School. (A.R. 291.) Both positions were

campus administrator positions, and Jenkins' compensation remained the same. (A.R. 286.) The District provided the reassignment notice prior to the "penalty-free resignation date," which for the 2011-2012 school year, was July 8, 2011.[3] Jenkins did not resign, but instead accepted her new position as assistant principal at Crosby High School.

On July 18, 2011, Jenkins filed a grievance with the Superintendent through the District's board policy DGBA, which is an internal grievance/complaint procedure available for employees. (*See* A.R. 331.) In her grievance, Jenkins alleged that the Superintendent lacked the legal authority to reassign her from an intermediate school principal position to a high school assistant principal position because it amounted to an improper change in professional capacity in violation of the Texas Education Code. (A.R. 287.)

The District held a Level Two grievance hearing to address the complaint. (A.R. 284.) In his decision upholding her reassignment, the Superintendent communicated his rationale for the reassignment explaining that Jenkins' "skill set could meet a real need at [the] High School." (A.R. 285.) According to the Superintendent, the high school campus was in dire need of "administrative support and focus" and Jenkins' "previous experiences, . . . skills and abilities with

---

[3] The "penalty-free" resignation period is a statutory period of time provided to an individual employed under a term contract during which the individual may relinquish his/her position and leave the employment of the district without penalty. *See* Tex. Educ. Code Ann. § 21.210.

organization, problem solving, and attention to detail" would be "valuable and helpful in this very important endeavor." (*Id.*) The Superintendent also detailed Plaintiff's duties as a high school assistant principal:

> At this much larger campus, you will continue to have numerous administrative responsibilities, including, but not limited to, appraising and making recommendations regarding staff, helping provide instructional leadership, implementing student discipline, facilitating and assisting with developing an effective campus improvement plan based on student needs, providing leadership in the identification, evaluation, and election of instructional programs, materials, and equipment with regard to increased student achievement, training teachers to utilize various instructional strategies to meet student learning needs, assisting in the planning and implementation of staff development programs designed to fulfill the professional growth needs of the high school staff, planning and implementing staff development programs designed to fulfill the professional growth needs of the high school staff, working directly with parents and patrons on solving problems and addressing numerous issues that may be presented, facilitating the implementation of new assessment and working to support the alignment of campus and district curriculum, as well as numerous other administrative duties as assigned.

(A.R. 285-86.)

Jenkins was not satisfied with the Superintendent's decision and filed an appeal on September 27, 2011, through a Level Three grievance. (A.R. 282.) On October 24, 2011, the Crosby ISD Board of Trustees held a hearing. (A.R. 255.) At the time of her Level Three grievance hearing in October 2011, Jenkins had been performing in her role of assistant principal for Crosby High School for approximately nine (9) weeks. At no time, nor in any grievance hearing, did

Jenkins argue that the duties outlined for her current assistant principal position were untrue, inaccurate, or needed further clarification. Nor did Jenkins claim that her principal duties at the intermediate school were substantially different than her administrative duties as an assistant principal at the much larger high school. (*See* A.R. 255, 258-61; *see also* A.R. 155-58.)

The Board denied Jenkins' grievance in a six to one vote. (A.R. 324.) Consequently, Jenkins filed a Petition for Review with the Commissioner of Education on December 2, 2011. (A.R. 155.) On December 19, 2013, the Commissioner issued his Decision denying Plaintiff's petition in part and dismissing in part. (App'x 1.) The Commissioner rejected Jenkins' arguments and concluded that being employed by a school district as a principal under a term contract does not mean that the person is employed under the professional capacity of "principal." (A.R. 29, ¶10.) The Commissioner went on to find that Jenkins' professional capacity was "administrator," and that the District's reassignment of Jenkins to an assistant principal position was within the same professional capacity; therefore, the District did not violate the Texas Education Code. (App'x 1, p. 25, ¶¶12, 14.)

## SUMMARY OF THE ARGUMENT

Jenkins failed to plead this case as a demotion, and instead opted to plead it as a failure to employ her in the "same professional capacity" in violation of §

21.206(b). Jenkins' claim, however, involved a mid-contract reassignment of Plaintiff; thus, the requirement in § 21.206(b) to employ an employee in the "same professional capacity" was not even triggered in this case, depriving the Commissioner of jurisdiction. Assuming the Commissioner did have jurisdiction, he properly determined that Jenkins' reassignment from principal to assistant principal was in the "same professional capacity" and, therefore, Jenkins' reassignment did not violate §21.206. This decision was appropriate and supported by substantial evidence for a number of reasons. First, the term "same professional capacity" is not defined in the Education Code. Consequently, over the last three decades, the Commissioner has consistently interpreted "same professional capacity" by comparing the duties, responsibilities, and salary of the reassigned position and not by the title of the position alone. Second, the Commissioner has properly declared that "administrator" is a distinct professional capacity; that a principal is an administrator; and that reassignment from a principal to assistant principal position can be appropriate. Third, the Commissioner has never defined principal as its own professional capacity and has consistently declined to do so. Finally, the Commissioner's longstanding interpretation should be afforded substantial deference by this Court and should be upheld by the doctrine of legislative acquiescence. Jenkins' arguments to the contrary are misplaced, inaccurate, and, if adopted by this Court, will result in poor public policy for Texas

5

school districts throughout the entire state. Consequently, this Court should affirm the Commissioner's decision and deny Jenkins' appeal.

## ARGUMENT AND AUTHORITIES

### I.  Standard of Review

"On appeal of the district court's judgment, the focus of the appellate court's review, as in the district court, is on the decision of the Commissioner." *Goodie v. Houston Indep. Sch. Dist.,* 57 S.W.3d 646, 650 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Montgomery Indep. Sch. Dist. v. Davis,* 34 S.W.3d 559, 562 (Tex. 2000)). A court may not reverse the Commissioner's decision unless his decision is not supported by substantial evidence or his conclusions of law are erroneous. *See* Tex. Educ. Code Ann. § 21.307(f); Tex. Gov't Code Ann. § 2001.174; *Davis,* 34 S.W.3d at 566. Substantial evidence means more than a mere scintilla; thus, the evidence may preponderate against the decision, yet still amount to substantial evidence. *Mireles v. Tex. Dep't of Pub. Safety,* 9 S.W.3d 128, 131 (Tex.1999). The test is whether reasonable minds could have reached the same conclusion as the Commissioner. *See Tex. State Bd. of Dental Exam'rs v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988). The appellant bears the burden of demonstrating that the Commissioner's decision was not supported by substantial evidence. *Matthews v. Scott,* 268 S.W.3d 162, 172 (Tex. App.—Corpus Christi

2008, no pet.); *Miller v. Houston Indep. Sch. Dist.*, 51 S.W.3d 676, 680 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

Whether the Commissioner's Decision meets this standard is a question of law. *Davis,* 34 S.W.3d at 566. "With respect to conclusions of law, the Commissioner's reasoning for his decision is immaterial if his conclusion is correct." *Goodie,* 57 S.W.3d at 650; *Judson Indep. Sch. Dist. v. Ruiz*, 04-13-00706-CV, 2015 WL 1501758, at \*3 (Tex. App.—San Antonio Mar. 31, 2015, pet. filed). The court, therefore, must uphold the Commissioner's Decision on any legal basis shown in the record. *Goodie,* 57 S.W.3d at 650. Finally, as with administrative agencies generally, the Commissioner's construction of a statute is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain meaning of the statute. *Id.* (citing *Dodd v. Meno,* 870 S.W.2d 4, 7 (Tex.1994)); *see also Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 443 (Tex. App.—Austin 2011, no pet.). The Texas Supreme Court has held that, in education law, the Court should defer to the Commissioner's "reasonable determination in an area where he possesses considerable authority and expertise." *Dodd,* 870 S.W.2d at 7. When the Education Code is ambiguous or silent as to a term, the question "is not whether the interpretation of the statute posed by [the plaintiff] is reasonable, but whether the Commissioner's interpretation is

reasonable and does not contradict the plain language of the statute." *Poole*, 344 S.W.3d at 444.

## II.     The Term Contract Nonrenewal Act

The vast majority of Texas school districts employ teachers, administrators, and other professionals pursuant to a term contract. A term contract is a contract for employment between a school district and an individual for a fixed number of years, not to exceed five school years. *See* Tex. Educ. Code Ann. § 21.201(3). Chapter 21, Subchapter E of the Texas Education Code is referred to as the Term Contract Nonrenewal Act ("TCNA") and provides extensive administrative processes that a school district must follow prior to terminating or nonrenewing a term contract. An employee may be proposed for termination during the contract term only for good cause or a financial exigency. *Id.* §21.211. In that situation, the employee is entitled to notice and a hearing pursuant to the procedures outlined in Chapter 21, Subchapter F. *See id.* §§21.251, *et seq*.

Alternatively, at the end of a contract term, the board of trustees must determine whether it will renew or nonrenew the employee's contract for another term. The TCNA requires the following notice:

> (a) Not later than the 10th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract. The notice must be delivered personally by hand delivery to the teacher on the campus at which the teacher is employed, except that if the teacher is not present on the campus on

8

the date that hand delivery is attempted, the notice must be mailed by prepaid certified mail or delivered by express delivery service to the teacher's address of record with the district. Notice that is postmarked on or before the 10th day before the last day of instruction is considered timely given under this subsection.

(b) The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

(c) This section does not apply to a term contract with a superintendent.

*Id.* §21.206.[4] Upon receiving notice of a proposed nonrenewal, the employee has the right to request a hearing before the board. *See id.* §21.207.

The Commissioner's interpretation of the term "same professional capacity" in §21.206(b) is the crux of this case. Jenkins asserts that, as a principal, the only position within her "same professional capacity" is another principal position. *See* Appellant's Brief, pp. 14-30. Therefore, according to Jenkins, the District's reassignment of her from principal to assistant principal was in violation of the "same professional capacity" mandate. *See id.* The Commissioner disagreed finding that Jenkins' professional capacity was as an administrator, and Jenkins' reassignment from principal to assistant principal was in the "same professional capacity" and did not violate §21.206(b). (*See* App'x 1.)

---

[4] The term "teacher" as used in this provision is defined much more broadly than the traditional concept of teacher. *See* Tex. Educ. Code Ann. §21.201(1).

**III.** **Jenkins' Claim Did Not Involve An Expiring Term Contract And, Consequently, Was Not Ripe For The Commissioner's Review, as Pled.**

The requirement to employ an individual, such as Jenkins, in the "same professional capacity" is triggered when a term contract is about to expire and the board of trustees fails to give timely notice of a proposed nonrenewal. *See* Tex. Educ. Code. Ann. § 21.206(b). Under those very specific circumstances, a school district is obligated to employ the individual within the "same professional capacity" for at least one additional school year. *See id.* This is not the factual scenario that occurred in this case.

Here, Jenkins received timely and appropriate notice, her contract was renewed for a two-year term, and she began the terms of her new contract assigned to serve as principal. (A.R. 294.) After the renewal process and ***during*** the term of Jenkins' new contract, the Superintendent, pursuant to both the contractual agreement made between the parties and Crosby ISD Board Policy DK (Local), exercised his express authority and reassigned Jenkins "to other or additional duties for which [she was] professionally certified or otherwise qualified to perform." (*See* A.R. 203, 294.) In the Superintendent's professional judgment and in the best interest of the District, Jenkins' skill set would serve an important role at the high school. (*See* A.R. 285.)

Under these facts, the "same professional capacity" requirement and analysis pursuant to §21.206(b) was not triggered because Jenkins' contract was renewed

10

and she was originally assigned to serve in the same position. In the context of a multiple year contract, such as Jenkins', due process via nonrenewal is not an available remedy under Chapter 21 of the Education Code until the end of the multiple-year term. *See* Tex. Educ. Code Ann. §§ 21.211, 21.251 *et seq.*; *see also* App'x 1, pp. 5-6.

Nevertheless, Jenkins pled her case to the Commissioner as an inappropriate change in professional capacity without due process in violation §21.206 – a due process she was not entitled to because the District was not seeking to nonrenew her contract nor had it failed to provide appropriate, timely notice. Although it ultimately would have been unsuccessful under the present facts, Jenkins could have and should have pled an inappropriate demotion, which would have been the proper pleading for this mid-contract reassignment case. Jenkins failed to do so instead electing to plead the strained and unsupported argument of "once a principal always a principal." (*See* A.R. 132; *see also* C.R. 82-87.)

This case is factually similar to *Murillo v. Laredo Indep. Sch. Dist.*, Docket No. 027-R3-0108 (Comm'r Educ. 2012). (App'x 3.) Murillo was employed under a term contract for the 2006-2007 school year as a middle school principal. Murillo signed another contract with the district for the 2007-2008 school year as a "professional employee." Murillo accepted the contract and shortly into its term was reassigned to the position of Human Resources Coordinator. Murrillo filed

internal grievances and then an appeal to the Commissioner. One of Murillo's complaints was that the district changed her professional capacity in violation of §21.206. The Commissioner disagreed and held:

> A school district does not violate Texas Education Code section 21.206 when a term contract expires without notice of proposed nonrenewal and the district employs the teacher in a position for the next school year that the teacher held under the contract during the previous school year. If a teacher holds the same position in both school years, the teacher's professional capacity has not changed. Because Respondent employed Petitioner for the 2007-2008 school in a position that Petitioner held under her 2006-2007 contract, Respondent did not violate Texas Education Code section 21.206.

*Id.* at 3.

Similarly, Jenkins' reliance on §21.206 is misplaced because no violation of 21.206 had occurred at the time she filed her appeal with the Commissioner. Jenkins held the same position (principal) in both school years, and was then properly reassigned during the term of the contract to a new position pursuant to the language of the contract, state law, and local policy. Consequently, Jenkins' case was not ripe at the time she filed and should have been dismissed based on a lack of jurisdiction. *See Holman v. Arp Indep. Sch. Dist.*, Docket No. 093-R8-805 (Comm'r Educ. 2007) (stating that ripeness is a component of subject-matter jurisdiction and dismissing appeal because petitioner had not yet been injured by the policy challenged) (App'x 4). The Commissioner's conclusion of law that

12

Jenkins' claim was ripe as to the 2011-2012 school year was erroneous and should be reversed by this Court. (*See* App'x 1, pp. 5-6; 24, ¶7.)

**IV.    Assuming *Arguendo* §21.206 Applied To Jenkins' Claim, The Commissioner Correctly Determined that Jenkins' Reassignment from Principal to Assistant Principal was in the Same Professional Capacity and Legally Valid.**

This Court should affirm the Commissioner's Decision because substantial evidence shows that Jenkins' reassignment from the principal of an intermediate school to an assistant principal of a high school was within the "same professional capacity" and not in violation of §21.206. Jenkins seeks for this Court to reverse the Commissioner and find that the position of principal constitutes its own professional capacity, resulting in the unworkable conclusion that a principal may never be reassigned to any position other than that of principal. Jenkins' position constitutes a radical departure from the longstanding precedent set by the Commissioner and should not be embraced by this Court.

> **1.    *The phrase "same professional capacity" is not defined in the Texas Education Code; therefore, the Commissioner's interpretation must be afforded broad deference.***

Although the phrase "same professional capacity" is used in §21.206(b) of the Education Code, the phrase has not been defined by the Legislature, causing it to be susceptible to multiple interpretations. *See Lehr. v. Ector County Indep. Sch. Dist.*, Docket No. 003-R3-0908 (Comm'r Educ. 2011) (stating that the Texas Education Code does not define "same professional capacity") (Appellant's Brief,

13

App'x 9).  When vagueness, ambiguity, or room for policy determinations exist, as in this case, the Court should defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute.  *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).  "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute."  *Dodd*, 870 S.W.2d at 7.  Given the Commissioner's considerable authority and expertise in matters involving the Education Code, the Court should not be inclined to reverse the Commissioner's reasonable determination.  *See id.*  (upholding the Commissioner's interpretation of the definition of "teacher" in the Term Contract Nonrenewal Act); *see also McGilvray v. Moses*, 8 S.W.3d 761, 764 (Tex. App.—Fort Worth 1999, pet. denied).

**2.    *The Commissioner has reasonably and consistently interpreted the phrase "same professional capacity."***

Because the phrase "same professional capacity" is not defined, the Commissioner has been tasked with interpreting and applying the "same professional capacity" requirement found in §21.206.  The Commissioner first ruled on this issue in 1985 in the seminal case of *Barich v. San Felipe-Del Rio Consolidated Indep. Sch. Dist.*, Docket No 117-R1a-484 (Comm'r Educ. 1985) (Appellant's Brief, App'x 6).  In that case, the Commissioner outlined what has

14

become the well-established test for analyzing the "same professional capacity" question:

> It is more reasonable to conclude that the legislature, by using the term, "same professional capacity" (instead of "exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances the validity of a particular placement will be clear. For example, an administrator who does not receive notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a librarian; etc.

> In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (*e.g., administrator*), but nevertheless be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such an assignment include, but are not limited to differences in authority, duties, and salary.

> A reassignment is in the same professional capacity if the employee could have contracted with the teacher for the reassignment, that is a district cannot reassign an employee to a position that the employee is not certified to hold, and when both positions are in the same category, *such as administrator*, whether applying such factors as differences in authority, duties, and salary show that the two positions are really in two different professional capacities.

*Id.* at 8 (emphasis added).

Thus, according to the Commissioner, the focus is not on the title of the positions at issue, but rather on two fact-intensive questions: (1) whether the

employee could contract for the reassigned position and (2) whether the new position is one of similar authority, duties, and salary. The phrase "same professional capacity" must not be interpreted to mean "the exact same position," and must allow school districts the necessary flexibility to make personnel changes and decisions.

Over the last three decades, the Commissioner repeatedly has evaluated, from a nonrenewal perspective, whether a particular assignment or reassignment is in the required same professional capacity, and has consistently applied the test first set out in *Barich*. The Commissioner's Decision provides a detailed and thorough analysis of *Barich* and its progeny regarding how the phrase "same professional capacity" is to be evaluated and applied. *See* App'x 1, pp. 9-16; *see also* Appellant's Brief, Appx. 13; *Gustafson v. Canutillo Indep. Sch. Dist.*, Docket No. 113-R10-0812 at 6-13 (Comm'r Educ. 2014) (App'x 5).

3. ***The Commissioner has properly declared that "administrator" is a distinct professional capacity.***

On numerous occasions, the Commissioner has directly addressed the very issue on appeal in this case – the reassignment of administrators (including principals) – and has correctly determined that "administrator" itself is an appropriate professional capacity.

> It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly.

16

> Districts have responded to this law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me consistent with the policies of the TCNA.

*Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 247-3-491 (Comm'r Educ. 1993) (Appellant's Brief, App'x 8); *see also Barich*, Docket No 117-R1a-484 at 8 (referencing "administrator" as a professional category); *Ramos v. El Paso Indep. Sch. Dist.,* Docket No. 002-R10-900 (Comm'r Educ. 1999) (the district properly transferred the employee from the position of high school principal to the position of elementary principal) (App'x 6); *Young v. Leggett Indep. Sch. Dist.,* Docket No. 175-R3-898 (Comm'r Educ. 1999) (contracted as a teacher/coach, the district properly reassigned the employee from the position of varsity coach and teacher to the position of junior high school coach and teacher) (Appellant's Brief, App'x 10); *Murillo*, Docket No. 027-R3-0108 at 2-3 (contracted as a "professional employee," the district properly reassigned the employee from a principal position to the position of Human Resource Coordinator).

Moreover, the Commissioner has directly addressed the issue of a principal being reassigned to an assistant principal position and has found the reassignment appropriate under many circumstances. *See, e.g.*, *Pasqua v. Fort Stockton Indep. Sch. District,* Docket No. 011-R3-1102 (Comm'r Educ. 2004) (contracted as an

17

administrator, the district properly reassigned the employee from the position of high school principal to the position of middle school assistant principal) (App'x 7); *Underwood v. West Rusk County Consolidated Indep. Sch. Dist.*, Docket No. 062-R3-198 (Comm'r Educ. 1998) (contracted as an administrator, the district properly reassigned the employee from principal of an independent middle school campus to the position of principal or assistant principal for grades 7 to 9 at a unified junior high/high school campus) (App'x 8); *McCoy v. Kermit Independent School District*, Docket No. 004-R3-0908 (Comm'r Educ. 2012) (contracted as an administrator, the district properly reassigned the employee from the position of principal to the position of assistant principal) (App'x 9); *Gustafson*, Docket No. 113-R10-0812 at 6-13 (contracted as administrator, the district properly reassigned the employee from a principal position to an assistant principal position).

**4.** ***Tex. Educ. Code §21.201(1) does not define "professional capacity" for purposes of §21.206.***

Section 21.201(1) of the Education Code defines the term "teacher" for purposes of identifying which professionals in the educational setting are entitled to a Chapter 21 contract:

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, school counselor, or other full-time professional employee who is required to hold a certificate issued under Subchapter B or a nurse. . . .

Tex. Educ. Code Ann. §21.201(1).

Jenkins erroneously asserts that the definition of "teacher" in §21.201 should be used to define the term "professional capacity" for purposes of 21.206(b). *See* Appellant's Brief at 14-20. According to Jenkins, pursuant to this definition, "principal" constitutes one of several professional capacities specifically identified; therefore, the District can only reassign principals to other principal positions in order to comply with the "same professional capacity" requirement under 21.206(b). *See id.*

Jenkins' position is completely unsupported by a series of Commissioner's decisions. A multitude of cases exist where the Commissioner has thoroughly analyzed the meaning of "same professional capacity" and appropriately and specifically rejected Jenkins' argument that 21.201's listing of individual classifications defines the term professional capacity for purposes of 21.206. *See, e.g.*, *Perales v. Robstown ISD*, Docket No. 052-R10-104, 084-R-604 (Comm'r Educ. 2006) (stating that "'same professional capacity,' as used in Texas Education Code section 21.206, is not limited to the individual classifications used in Texas Education Code section 21.201(1). This interpretation of the Commissioner is affirmed by the doctrine of legislative acceptance") (Appellant's Brief, App'x 7); *Carpenter*, Docket No. 247-R3-491, at 3 ("Petitioner would have the commissioner…hold that the phrase 'same professional capacity" is defined…by the definition of 'teacher' found in 21.201(1) of [the TCNA]….[T]his phrase

is….undefined…and…is a matter for interpretation by the commissioner, in the first instance, and by the courts.").

Indeed, the Commissioner has articulated multiple problems with Plaintiff's interpretation. *See Perales*, Docket No. 052-R10-104, at 3-4. First, §21.201 specifically provides a definition of "teacher" that is used to determine who is entitled to a term contract, not "professional capacity." *See id.* at 3. Second, under the analysis, the term "other full-time professional employee who is required to hold a certificate under Subchapter B" would also be a professional capacity. *See id.* According to the Commissioner, this "hardly seems a distinct category." *Id.* Third, the Commissioner's longstanding interpretation of the phrase "same professional capacity" does not support this analysis. *See id.* at 4. The Commissioner has repeatedly upheld categories of professional capacities that are not listed in §21.201(1). *See id.*

Contrary to Jenkins' assertion, the Commissioner certainly has not "conceded that §21.201(1) defines 'professional capacity," nor has he shown "indecisiveness" on this issue. In fact, the Commissioner recognized

> From the first substantive decision made in the first year the issue could be addressed by the Commissioner, the named positions found at Texas Education Code section 21.201(1) were not held to be professional capacities as the Commissioner used the term 'administrator' that is not listed to include superintendents and assistant principals.

App'x 1, p. 11.

The Commissioner specifically concluded in his decision in this case, "[th]e fact that the position of "principal" is listed in the first sentence of Texas Education Code section 21.201(1) does not mean that if one is employed by a school district as a principal under a term contract that one is employed under the professional capacity of principal." (*Id.* at 25, ¶10.) The Commissioner recently reiterated this same analysis, once again rejecting the same argument Jenkins makes here. *See Gustafson*, Docket No. 113-R10-0812 at 15-16, 21.

The Commissioner has never interpreted "principal" as its own professional capacity, and this Court should not do so now. In reality, unlike a teacher, counselor, librarian and others, both a principal and an assistant principal are administrators; have administrative duties and skills; and have an administrative certification. In fact, to serve as either a principal or an assistant principal in Texas public schools, an individual must hold the same "Principal Certificate." *See* 19 Tex. Admin. Code Ann. §241.1(d). "Administrator" is, therefore, the proper professional capacity for both a principal and an assistant principal.

**5.      *The Commissioner's interpretation is entitled to deference.***

The Commissioner's interpretation of the phrase "same professional capacity" is reasonable and does not conflict with the plain language of the statute. The Commissioner, who is charged with enforcement of the Education Code, possesses considerable authority and expertise in this area of the law; therefore, his

21

interpretation is entitled to serious consideration and deference. *See Combs*, 340 S.W.3d at 438; *Tarrant Appraisal Dist.,* 845 S.W.2d at 823; *McGilvray*, 8 S.W.3d at 764; *Railroad Comm'n v. Tex. Citizens for a Safe Future & Clean Water,* 336 S.W.3d 619, 624–25 (Tex. 2011) (giving "serious consideration" and "some deference" to agency's interpretation of a statute it is charged with enforcing so long as the construction is reasonable and does not conflict with the statute's language).

Jenkins seeks this Court to overturn the Commissioner's longstanding interpretation of this phrase and hold that, in the context of a principal, "same professional capacity" must be construed to mean only another principal position. This Court should not accept Jenkins' invitation to alter this well-established and well-reasoned position of the Commissioner.

6.     ***The Commissioner's longstanding interpretation of "same professional capacity" should be upheld by the doctrine of legislative acquiescence.***

A firmly-established statutory construction rule in Texas jurisprudence is the concept of legislative acquiescence. Under this doctrine, if a court or an administrative agency (such as the Commissioner) has given a longstanding construction to an ambiguous statute, and in the face of this longstanding construction, the Legislature reenacts the statute without substantial change, the Legislature is presumed to have been familiar with the construction and adopted it.

22

*See Tex. Dept. of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004); *see also Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 237 (Tex. 2010) ("Once this Court has construed a statute and the Legislature re-enacts the statute without substantial change, it is presumed the Legislature has adopted our interpretation.").

This Court has expressly recognized and applied the doctrine of legislative acquiescence. In *Texas Association of Appraisal Districts, Inc. v. Hart*, the Court was asked to determine whether two entities constituted "governmental bodies" subject to disclosure of public information under the Texas Public Information Act. 382 S.W.3d 587 (Tex. App.—Austin 2012, no pet.) The Court determined that the definition was susceptible to more than one meaning and that deference was to be given to the Attorney General's interpretation. *See id.* at 593. The Court also recognized that for over two decades since the Attorney General first interpreted the definition, the Legislature had amended or modified section 552.003(1)'s definition of "governmental body" several times without altering the language. *See id.* at 594. "Thus, [the Court was required to] presume that the Legislature was aware of the Attorney General's interpretation of section 552.003(1)(A)(xii) and adopt it as its own." *Id.*; *see also DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 422 (Tex. App.—Austin 2006, pet. denied) (finding Comptroller's interpretation of the sale-for-resale exemption in the Tax Code was longstanding;

the Legislature had amended the provision several times without substantial change, therefore, the Legislature was presumed to be familiar with and to have adopted the Comptroller's interpretation).

The Commissioner appropriately determined that the doctrine of legislative acquiescence applies to this case and that the "Legislature has acquiesced in the Commissioner's interpretation of the phrase 'same professional capacity.'" (App'x 1, pp. 17-18.) As discussed in detail above, the term "same professional capacity" is not defined, so the Commissioner has been tasked with interpreting its meaning. The Commissioner's well-established interpretation of the phrase "same professional capacity" spans approximately three decades. As detailed in the Commissioner's Decision, the TCNA was amended by the Legislature on four occasions between 1990 and 2011, without altering the wording of the phrase or providing a clarifying definition. (*See* App'x 1, pp. 8-9; 17-18.) The Legislature, therefore, presumably was aware of the Commissioner's interpretation and has adopted it.[5] *See Mega Child Care, Inc.*, 145 S.W.3d at 176; *Transcon. Ins. Co.*, 330 S.W.3d at 237; *Texas Ass'n of Appraisal Districts, Inc.*, 382 S.W.3d at 593-94.

---

[5] During the 73rd Regular Legislative Session, a statutory definition of "same professional capacity" as it related to probationary and continuing contracts was proposed and rejected in Senate Bill 395. Section 13.118(d) provided the following: "Same professional capacity" means a position, including supervision of extracurricular activities, which is substantially equal in duties, responsibility, authority, certification, endorsement, education, and remuneration. No action was taken on the bill in committee. *See* App'x 10, Introduced Bill, Tex. S.B. 395, 73rd Leg., R.S. (1993). Although proposed, the Legislature elected not to adopt this definition, or any

24

As stated by the Commissioner:

> If the Legislature intended "same professional capacity" to mean any position listed in the definition of 'teacher,' the Legislature would have said so. Instead, the Legislature used an undefined phrase that it intended the Commissioner to interpret using his experience in how schools operate. The Commissioner has done so since the first opportunity to interpret the phrase at issue.

(App'x 3, p. 19.)

In fact, the TCNA was amended again during the 83th Legislative Session held in 2013; yet the Legislature did not add a definition of professional capacity or otherwise amend the statute to provide further clarity. *See* Act of 2013, 83th Leg., R.S., ch. 443, §10 (SB 715) (amending the definition of "teacher" under section 21.201 to state "school counselor" instead of "counselor"). Moreover, the Legislature recently completed the 84th Legislative Regular Session in June 2015. The district court's ruling in this case affirming the Commissioner's interpretation occurred in February 2015 – in the midst of the session. (Appx. 2.) Nevertheless, the Legislature took no action to amend or define the term "same professional capacity" in response to the outstanding ruling. The Legislature's continued silence lends itself to only one conclusion – the Legislature has adopted the Commissioner's longstanding interpretation, and this Court should too.[6]

---

definition, thereby affirming the Commissioner's reasonable interpretation and application of the phrase "same professional capacity."

[6] Notably, the Legislature has responded to the Commissioner's and the court's interpretation of the TCNA in the past. In 1994, the Supreme Court issued the case of *Dodd v. Meno*, in which it

25

In the present case, the Commissioner used his knowledge and experiences to properly determine that Jenkins' transfer from one administrative position to another administrative position, while keeping the same salary, was legally valid and in the same professional capacity.

### 7. *A change from principal to assistant principal is not a* **per se** *change in professional capacity.*

As discussed above, the Commissioner has appropriately determined on more than one occasion that principals and assistant principals are both administrators; therefore, based on the particular facts of the case, an assignment from principal to assistant principal can be in the "same professional capacity." *See, e.g.*, *Pasqua*, Docket No. 011-R3-1102, at 4, 7; *Underwood*, Docket No. 062-R3-198, at 2-4; *McCoy*, Docket No. 004-R3-0908, at 5, 7; *Gustafson*, Docket No. 113-R10-0812 at 15-16, 21. Jenkins asserts alternatively that even if this Court does not accept her argument that §21.201(1) defines the relevant categories for "professional capacity," a principal and assistant principal can never be in the "same professional capacity." According to Jenkins, a principal is such a unique position and so fundamentally different than an assistant principal, that it *per se* constitutes a professional capacity of its own and cannot fall within the more

upheld the Commissioner's interpretation of the definition of "teacher" in §21.201(1), and found that a nurse did not fall within the definition of "teacher," as it was defined at that time. *See* 870 S.W.2d 4, 5-6 (Tex. 1994). Shortly thereafter, during the 1995 Legislative Regular Session, the Legislature responded by amending the definition of "teacher" in §21.201(1) to include a nurse. *See* Acts 1995, 74th Leg., R.S., ch. 260, §1 (S.B. 1).

general category of "administrator." *See* Appellant's Brief at 20-24. Jenkins' arguments in this regard are misplaced.

Section 11.202 delineates the role of the campus principal (the instructional leader of the campus) and job requirements. Legislative history shows that the purpose of section 13.352(d), the predecessor to §11.202, was to "give principals more control over their campuses with a view to greater accountability for campus conditions and student achievement." Tex. Atty. General Op. DM-27 (1991) (App'x 11). The purpose of §11.202, however, was not to establish the role of principal as a unique, stand-alone "professional capacity," as Jenkins argues. While it is true that §11.202 of the Education Code identifies certain statutory duties of a principal, this provision does not equate to a *per se* finding that the position of principal is so fundamentally different and distinct that it must constitute its own professional capacity. *See* Tex. Educ. Code Ann. §11.202(b); *see also McCoy*, Docket No. 004-R3-0908 at 5.

In fact, principals and assistant principals are treated similarly in many respects. For example, both a principal and an assistant principal are required to hold a principal certificate, are required to actively participate in professional development activities and training, and are subject to the same standards for serving as a first-time campus administrator. *See* 19 Tex. Admin. Code Ann. §241.1(c), (d), §241.25; Tex. Educ. Code Ann. §21.046. These similarities further

27

support the argument that both positions are sufficiently similar and are appropriately considered administrative positions.

Jenkins' argument that the change from principal to assistant principal alone is sufficient to show a violation of the "same professional capacity" requirement of §21.206(b) is simply not supported, and is a position the Commissioner has specifically rejected. *See McCoy*, Docket No. 004-R3-0908, at 5 ("[I]n the present case Petitioner's argument is that the change from principal to assistant principal alone is sufficient to show a violation of Texas Education Code section 21.206(b). It is not."); *see also Barich*, Docket No 117-R1a-484, at 8 (stating "same professional capacity" does not mean "the exact same position"); *Gustafson*, Docket No. 113-R10-0812 at 6-13.

Even though Jenkins failed to plead it or exhaust her administrative remedies on the issue, and thus waived the argument, the appropriate analysis in determining whether a reassignment from principal to assistant principal is within the "same professional capacity" would be to consider the factors set forth by the Commissioner in *Barich*. Jenkins failed to argue at the Commissioner level as a factual matter that an actual comparison of her position as principal and her position as assistant principal lead to the conclusion that the two jobs were not in the same professional capacity. (*See* App'x'3, p. 22.) Jenkins instead relied solely

28

on the argument that as a matter of law the positions could not be in the same professional category.

Nevertheless, assuming *arguendo* that Jenkins properly asserted this argument, the Commissioner's application of the *Barich* test and determination that the two positions had similar duties, responsibilities, and salary is supported by substantial evidence. Jenkins' compensation remained the same in her position as assistant principal at the high school, and her administrative duties and responsibilities at a much larger high school campus remained substantially similar (A.R. 285-86).

8. ***The Commissioner considered the contract, compared the two positions at issue, and appropriately determined they were both within the professional capacity of administrator.***

Admittedly, the contract at issue is ambiguous with regard to an identified professional capacity. Jenkins contract was for an "employee" for 2011-2013. (A.R. 294.) Although the Commissioner has found that an employment contract simply listing "employee" is too broad to define the professional capacity; the analysis does not end at that point. How a contract defines the professional capacity is relevant but not necessarily dispositive. *See Carpenter*, Docket No. 247-R3-491 at 3. The Commissioner and the courts have consistently looked to the language of the employment contract itself and attempted to give the parties the benefit of their bargain. *See id.*

Jenkins seeks to rewrite her contract by replacing the term "employee" with her job title of "principal." The Commissioner, however, has not taken the approach of looking merely at the job title to define "professional capacity." Instead, he looks to the terms of the contract and the employment category within which the employee is actually assigned (in the present case as an administrator), and considers whether the two positions at issue are in the same professional capacity based upon a factual comparison of the job duties, responsibilities, and salary. *See, e.g., Wheeler v. Austin Indep. Sch. Dist.*, Docket No. 008-R3-1108 (Comm'r Educ. 2011) (Appellant's Brief, App'x 11).

Here, the terms of Jenkins' contract are particularly relevant. Jenkins' contract expressly provided the Superintendent the right to reassign Petitioner:

> …the Superintendent of Crosby Independent School District shall have the right to assign such duties to the Employee as Superintendent shall deem proper, and since the Employee is not employed to fill a specific position or assignment, the Superintendent may assign or reassign the Employee to other or additional duties for which he or she is professionally certified or otherwise qualified to perform.

(A.R. 294.)

The contract explicitly stated that: (1) the Superintendent has the right to assign Plaintiff as he "shall deem proper"; (2) Plaintiff is not employed to fulfill a specific position, including campus principal; and, (3) the Superintendent can reassign Plaintiff to any position for which she is certified and qualified to perform. *Id.* Jenkins was certified and qualified to serve as both a principal and an

assistant principal, as the certification requirements are the same. *See* Tex. Admin. Code Ann. §241.1(d); *see also* Section IV.7, *infra*. The Commissioner's interpretation of Jenkins' professional capacity as "administrator" rather than just "principal" is consistent with the Superintendent's contractual reassignment authority – Jenkins' interpretation is not.

Moreover, the Superintendent's reassignment authority is further outlined and supported in state law and board policy. As stated in the Education Code, the statutory duties of the Superintendent specifically include the administrative authority and responsibility for the *assignment of all personnel* of the District. *See* Tex. Educ. Code Ann. §11.201(d)(2) (emphasis added). Crosby ISD Board Policy DK (LOCAL) also states:

> *All personnel* are employed subject to assignment *and reassignment by the Superintendent* or designee when the Superintendent determines that the assignment or reassignment *is in the best interest of the District*. Reassignment shall be defined as a transfer to another position, department, or facility that does not necessitate a change in the employment contract of a contract employee.

(A.R. 203, Crosby ISD Board Policy DK (LOCAL) (emphasis added).)

Jenkins' preferred solution – replacing "employee" with "principal" – runs contrary to these state and local authorities as well. The Commissioner's interpretation – that the appropriate professional capacity for principal and assistant principal is "administrator" – is supported by substantial evidence and should be affirmed. *See City of Austin v. Pub. Util. Comm'n*, 146 S.W.3d 742, 748

31

(Tex. App.—Austin 2004, no pet.) (stating courts will affirm the agency's interpretation of an agreement if the interpretation is supported by substantial evidence).

9.   *Plaintiff's argument that "once a principal, always a principal" is an unsound policy for school districts in the state of Texas.*

Jenkins advocates that principals may only be reassigned to other principalships at other campuses within the school district. This is unsound policy that contradicts well-settled law established by the Commissioner. As stated previously, the Commissioner has recognized the importance of flexibility for a school district to reassign employees in order to manage staff to cover school needs. *See Carpenter*, Docket No. 247-3-491, at 4. This flexibility is especially paramount when reassigning administrators. *Id*., *see also Ramos*, Docket No. 002-R10-900 2002, at 2-3 (school districts have broad discretion when it comes to transferring administrators); *Young*, Docket No. 175-R3-898, at 4 (the phrase "same professional capacity" encompasses broad categories). To hold otherwise, as suggested by Jenkins, would unjustifiably disadvantage students, particularly, as in the present case, when an individual's, such as Jenkins', skill sets are needed at a particular campus. (*See* A.R. 285.) Moreover, such a limitation would inappropriately limit a Superintendent's reassignment authority and ability to manage staff and meet the ever-changing needs of students within a school district.

Jenkins' position, if adopted by this Court, would cause unjustified operational difficulties for a school district. For example, a school district could face the situation of having to close a campus due to budgetary constraints and/or lower student enrollment. Under Jenkins' position, if no available principal position existed or if the principal at the campus to be closed refused to be assigned to another administrative position, the school district would have to terminate or nonrenew the employment contract of the principal at that campus instead of having the option to reassign the employee to another non-principal, administrative position. Besides being unreasonable, such a result is neither mandated by statute, case law, or reason. Jenkins' strained attempt to redefine "same professional capacity" is bad public policy, would reverse well-articulated decisions by the Commissioner, and should be rejected by this Court.

## CONCLUSION AND PRAYER

For all of the reasons set forth above, Appellant's reassignment from principal to assistant principal was legally valid and did not violate §21.206 of the Texas Education Code. The Commissioner's Decision, which was based on three decades of precedent from the agency, was correct and supported by substantial evidence. The District, therefore, respectfully requests that this Court affirm the decision of the Commissioner.

Respectfully submitted,

**THOMPSON & HORTON LLP**

/s/ *David B. Hodgins*

David B. Hodgins
State Bar No. 09775530

Amber K. King
State Bar No. 24047244

Frances R. Broussard
State Bar No. 24055218

3200 Southwest Freeway, Suite 2000
Houston, Texas  77027
Telephone: (713) 554-6745
Telecopy: (713) 583-8245
***Attorneys for Appellee Crosby ISD***

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 7,881.

/s/ *Amber K. King*
Amber K. King

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September, 2015, a true and correct copy of the above and foregoing pleading was served upon counsel of record via electronic filing and certified mail, RRR:

Kevin F. Lungwitz
The Lungwitz Law Firm, P.C.
3005 S. Lamar Blvd.
Suite D-109-362
Austin, Texas 78704-4785
P. 512.462.0188
F. 866.739.7138
kevin@lungwitzlaw.com
*Via CMRRR: 70102780000049858814*

Andrew Lutostanski
Assistant Attorney General
Administrative Law Division
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O Box 12548, Capitol Station
Austin, Texas 78711-2548
P. 512.475.4300
F. 512.320.0167
*Via CMRRR: 70102780000049858807*

/s/ *Amber K. King*
Amber K. King

35

**No. 03-15-00313-CV**

---

IN THE COURT OF APPEALS FOR THE
THIRD JUDICIAL DISTRICT OF TEXAS
AUSTIN, TEXAS

---

**HERMENIA JENKINS,**
*Appellant*

**v.**

**CROSBY INDEPENDENT SCHOOL DISTRICT AND MICHAEL L.
WILLIAMS, COMMISSIONER OF EDUCATION,**
*Appellees*

---

On Appeal from the District Court of Travis County, Texas
200th Judicial District
Trial Court Cause No. D-1-GN-14-000619

---

**APPELLEE CROSBY INDEPENDENT SCHOOL DISTRICT'S APPENDIX**

---

Decision of the Commissioner ……………………………………………..Tab 1

District Court's Final Judgment …………………………………………Tab 2

*Murillo v. Laredo Indep. Sch. Dist.*
Docket No. 027-R3-0108 (Comm'r Educ. 2012) ……………………..Tab 3

*Holman v. Arp Indep. Sch. Dist.*
Docket No. 093-R8-805 (Comm'r Educ. 2007) …………………………Tab 4

*Gustafson v. Canutillo Indep. Sch. Dist.*
Docket No. 113-R10-0812 (Comm'r Educ. 2014) …………………………Tab 5

*Ramos v. El Paso Indep. Sch. Dist.*
Docket No. 002-R10-900 (Comm'r Educ. 1999)……………………...Tab 6

36

*Pasqua v. Fort Stockton Indep. Sch. District*
Docket No. 011-R3-1102 (Comm'r Educ. 2004) ……………………………..Tab 7

*Underwood v. West Rusk County Consolidated Indep. Sch. Dist.*
Docket No. 062-R3-198 (Comm'r Educ. 1998) …………………………………Tab 8

*McCoy v. Kermit Independent School District*
Docket No. 004-R3-0908 (Comm'r Educ. 2012) ……………………………..Tab 9

Introduced Bill, Tex. S.B. 385, 73rd Leg., R.S. (1993) ……………………..Tab 10

Tex. Atty. Gen. Op. DM-27 (1991) ………………………………………….Tab 11

# Crosby ISD's Appendix

# TAB 1

| | | |
|---|---|---|
| HERMENIA JENKINS | § | BEFORE THE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| CROSBY | § | |
| INDEPENDENT SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Hermenia Jenkins, appeals the denial of her grievance by Respondent, Crosby Independent School District. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to preside over this cause. Petitioner is represented by Kevin F. Lungwitz, Attorney at Law, Austin, Texas. Respondent is represented by David B. Hodgins, Attorney at Law, Houston, Texas[1].

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be denied in part and dismissed in part. Exceptions and replies were timely filed and considered.

The central issue in this case is whether a principal serving under a term contract can be reassigned to an assistant principal position in the year after the principal's contract has been renewed. By statute, such a reassignment must be in "same professional capacity." Petitioner contends that a bright line rule should be established so that a principal may only be reassigned to another principal position. For the Commissioner to so rule would require the Commissioner to overrule a string of cases going back to the Commissioner's earliest decisions under the Term Contract Nonrenewal Act. Further, such a ruling is not consistent with the intention of the Legislature which passed the statute in question. The Legislature did not create the purposed bright line rule, but instead used language that allows the Commissioner to

---

[1] The Texas Association of School Board's Legal Assistance Fund filed a Brief of *Amicus Curiae*.

exercise his broad experience in education to determine just what is the "same professional capacity" in each individual case.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[2].

1. In March 2011, Petitioner and Respondent signed a contract that provides in relevant part:

> 1. The Board hereby agrees to employ the Employee and the Employee agrees to serve the Board by engaging in duties as assigned by the Superintendent of the Crosby Independent School District for the school years 2011-2013 with beginning and ending dates as set by the Board.
>
> . . .
>
> 3. It is understood and agreed by the parties to this Contract that the Superintendent of the Crosby Independent School District shall have the right to assign such duties to the Employee as the Superintendent shall deem proper, and since the Employee is not employed to fill a specific position or assignment, the Superintendent may assign or reassign the Employee to other or additional duties for which he or she is professionally certified or otherwise qualified to perform

2. Petitioner served as the principal of Charles R. Drew Intermediate School from 2003 to the end of the 2010-2011 school year.

3. On June 28, 2011, Petitioner was reassigned from the position of principal at Charles R. Drew Intermediate to the position of assistant principal at Crosby High School.

4. The local record does not indicate with specificity what Petitioner's duties as assistant principal at Crosby High School are.

---

[2] *See* 19 TEX. ADMIN. CODE §157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

## Discussion

Petitioner asserts that Respondent improperly reassigned her. Respondent denies this claim. In particular, Petitioner alleges that Respondent's actions violated Texas Education Code section 11.202, which designates a principal as the instructional leader of a campus; section 11.201, which grants supervisory rights to superintendents, and section 21.206(b) which requires a school board that does not timely give notice of proposed nonrenewal to hire the teacher in the same professional capacity for the following school year. Petitioner also alleges that Respondent violated 19 TEX. ADMIN. CODE § 150.1021, which concerns the Commissioner's Recommended Appraisal process for administrators and policy DN(LOCAL). Respondent denies these claims.

### Rights

Petitioner claims her reassignment violated her rights under Texas Education Code section 11.202, 19 TEX. ADMIN. CODE § 150.1021, and policy DN(LOCAL). Texas Education Code section 11.202 is entitled "Principals." It provides that a principal is the instructional leader of a school. It lists seven duties of a principal. It requires school boards to adopt a policy for selecting principals. It gives a superintendent or designee final authority to assign teachers transferred due to enrollment shifts or program changes. Texas Education Code section 11.202 does not give Petitioner the right to a principal position. Likewise, 19 TEX. ADMIN. CODE § 150.1021, and policy DN(LOCAL) do not give Petitioner a right to a principal position. However, if Petitioner were entitled to a principal position, she would be entitled to the rights provided by this statute and rule, but not local policy. Under Texas Education Code section 7.057(a)(2)(A), the Commissioner lacks jurisdiction over violations of school district policies. *Reeves v. Aledo Independent School District*, Docket No. 106-R10-496 (Comm'r Educ. 1999)

### TEX. EDUC. CODE § 11.201

Texas Education Code 11.201(d)(2) provides that superintendents have responsibility for most assignments. Petitioner contends that Respondent's

superintendent reassigned her in an arbitrary and capricious manner and, hence, the reassignment is invalid. However, a superintendent does not violate Texas Education Code 11.201(d) when a superintendent poorly exercises an authority granted by this section. The Commissioner has held that:

> The provisions in question do not require this responsibility to be exercised fairly or wisely. The provisions also do not prohibit a district from taking action against superintendents who act rashly or unfairly.

*S.R.S. v Groesbeck Independent School District*, Docket No. 025-R5-105 (Comm'r Educ. 2006). Texas Education Code 11.201(d) could only be violated by a refusal to exercise the statutory grant of authority.

A board's decision may be overturned for being arbitrary and capricious. However, this is only the case when the board's decision itself is arbitrary and capricious. That a superintendent's action was arbitrary and capricious does not make a school board's decision arbitrary and capricious. If any action of a superintendent that was alleged to be was arbitrary and capricious could be appealed to the Commissioner, the Commissioner's docket would greatly expand. This would be contrary to the intention of the Legislature of limiting the Commissioner's jurisdiction, which can be seen by comparing Texas Education Code section 7.057 to the prior jurisdictional statute, Texas Education Code section 11.13. The Commissioner lacks jurisdiction under Texas Education Code section 7.057(a)(2)(A) over a claim Respondent's superintendent arbitrarily and capriciously reassigned her.

Same Professional Capacity

Petitioner contends that her reassignment is not proper because the positions of principal and assistant principal are not in the same professional capacity. The phrase "same professional capacity" occurs twice in the Texas Education Code. In Texas Education Code section 21.206 provides:

(a) Not later than the 10th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract. The notice must be delivered personally by hand delivery to the teacher on the campus at which the teacher is employed, except that if the teacher is not present on the campus on the date that hand delivery is attempted, the notice must be mailed by prepaid certified mail or delivered by express delivery service to the teacher's address of record with the district. Notice that is postmarked on or before the 10th day before the last day of instruction is considered timely given under this subsection.

(b) The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

(c) This section does not apply to a term contract with a superintendent.

If a school district fails to timely give a teacher notice of proposed nonrenewal when the teacher's contract is about to expire, the school district is required to employ the teacher in the "same professional capacity" for the following school year. A requirement to employ a teacher in the "same professional capacity" is triggered only when a contract is about to expire and timely notice of proposed nonrenewal is not given. The other time the phrase "same professional capacity" is used in the Texas Education Code is found at Texas Education Code section 21.212. This provision is very similar to Texas Education Code section 21.206. The major distinction is that it applies exclusively to superintendents.

In the present case, it would seem that no violation of Texas Education Code section 21.206 could occur because when Petitioner was reassigned her contract was not about to expire. Petitioner's contract will not expire until the end of the 2012-2013 school year. Petitioner's claim concerning Texas Education Code section 21.206 would not appear to be ripe. However, Petitioner points out that she was employed by Respondent as a principal just prior to her signing her 2011-2013 contract. Hence, during the 2011-2012 school year, Respondent was required to employ Petitioner in the same professional capacity as Petitioner held during the 2010-2011 school year. However, if

Petitioner were to prevail on this claim, she would only be entitled to be employed in the same professional capacity for the 2011-2012 school year and not for the 2012-2013 school year. While this may be viewed as a result that does not favor teachers, some implications of multiple year term contracts favor teachers.

As the Commissioner pointed out in *Smithwick v. Castleberry Independent School District*, Docket No. 085-R1-0711 n. 2 (Comm'r Educ. 2011), multiple year contracts can also benefit teachers. A multiple year contract may only be nonrenewed when it is about to expire. A school district that wishes to end a multiple year contract at the end of the fist contract year must proceed by the more difficult process of termination as opposed to nonrenewal. In such a case, the district is required to prove good cause and the case is heard by an independent hearing examiner. TEX. EDUC. CODE §§ 21.211, 21.251 *et seq*.

Must Principals Remain Principals?

Petitioner argues that the Commissioner should overturn precedent and conclude that if a principal's contract is not nonrenewed, a school district is limited to reassigning a principal to another principal position for the next school year. Petitioner argues that the only position that is in the same professional capacity of a principal is the position of principal. Precedent should not be lightly overturned. Teachers and school districts base important decisions in reliance on Commissioner's Decisions. But the fundamental principle of statutory construction is to give effect to the intention of the Legislature. If the Commissioner's long standing interpretation of the statute is in conflict with the intention of the Legislature, the Commissioner's interpretation should change.

TCNA

The Term Contract Nonrenewal Act[3] ("TCNA") was passed by the 67th Legislature in 1981[4]. Term Contract Nonrenewal Act, 67th Leg., R.S., ch. 765, 1981 Tex.

---

[3] Section 1 of SB 341 itself provided that "this act shall be known as "The Term Contract Nonrenewal Act."

[4] The TCNA became effective on August 31, 1981. However, because most contracts for the 1981-1982 school year had already been signed by that date, the TCNA really became operational for the 1982-1983

Gen Laws 2847. This law fundamentally changed teacher[5] contracts. Before the TCNA many districts hired teachers and administrators on one-year contracts. When the contract term expired, the district was not required to offer a contract for the new school year. *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex. 1985). Prior to the passage of the TCNA, school districts were not required to establish policy reasons for ending a contractual relationship, to give teachers the reasons why ending the contractual relationship was proposed, and to provide teachers with the opportunity for a hearing where the administration had the burden of proof to show that the teacher's contract should be nonrenewed. A key passage of the original TCNA, then numbered as Texas Education Code section 21.204, required a district that did not nonrenew a teacher's contract to hire the teacher for the next school year:

Notice
    (a) In the event the board of trustees receives a recommendation for nonrenewal, the board after consideration of written evaluations required by Section 21.202 of this subchapter and the reasons for the recommendation, shall in its sole discretion, either reject the recommendation or shall give the teacher written notice of the proposed nonrenewal on or before April 1 proceeding the end of the employment fixed in the contract.
    *(b) In the event of failure to give such notice of proposed nonrenewal within the time herein specified, the board shall thereby elect to employ such employee in the same professional capacity for the succeeding school year.*
    (c) The notice of proposed nonrenewal required in this section shall contain a statement of all the reasons for such proposed action.

(Emphasis added). If a teacher's contract was not noticed for nonrenewal, the school board was not only required to hire the teacher for the next school year but also to employ the teacher in the same professional capacity for the next school year. The fundamental dispute in this case is over the meaning of the phrase "same professional capacity."

---

school year. That makes the 1984-1985 school year, the first time the issue of whether a teacher was rehired in the same professional capacity could actually be raised.
[5] From the beginning, the TCNA has used an expansive definition of "teacher" that includes many who are not normally referred to as teachers.

Legislative History

The legislative history of the TCNA[6] sheds some light on the meaning of the phrase "same professional capacity." Senate Bill 341 created the TCNA. As originally filed, SB 341 was far more ambitious than the TCNA which became law. Under SB 341 as filed, a term or continuing contract could only be ended for "just cause." The contract could only be ended after the teacher was given written notice of deficiencies, assistance, and reasonable time for improvement. Evidence against a teacher could only be used if it was promptly brought to the teacher's attention. The hearing was to be held before an attorney selected by both parties. The hearing examiner's decision was final in that there was no appeal to the board or the Commissioner, but the hearing examiner's decision was appealable to district court under the Administrative Procedures and Texas Register Act.

More to the point of the current controversy, SB 341 as filed defined "demotion" in an expansive manner:

> . . . an involuntary reduction of a teacher to a position of lesser rank, responsibility, or compensation, or the reassignment of a teacher outside the scope of the teacher's teaching certificate or major or minor field of study.

Any loss of rank, responsibility, or compensation constituted a demotion. All of the procedures for ending a contract described in the preceding paragraph also applied when a teacher was proposed for demotion. Demotion could only occur after just cause was proved at a hearing. Demotion would apply to a change in professional capacity as well as many more situations. SB 341 made it through the Senate in substantially the same form as it was filed.

In the House, SB 341 became the TCNA. The House Education Committee passed its substitute for SB 341 with the following language in section 21.204(b).

---

[6] The relevant legislative history may be found at the website for the Legislative Reference Library of Texas. http://www.lrl.state.tx.us/index.cfm.

In the event of failure to give such notice of proposed nonrenewal within the time herein specified, the board of trustees shall thereby elect to employ such employee in the same capacity for the succeeding school year.

The meaning of the phrase "same capacity" is not defined in the Committee Substitute. "Same capacity" could perhaps be interpreted broadly to mean in a particular case: the fifth grade English teacher at Davis Elementary School. It could perhaps be interpreted strictly to mean any classroom teaching position. When SB 341 was heard by the House on Second Reading an amendment was made to include the word "professional" between the words "same" and "capacity." No definition was added for the phrase "same professional capacity."

*Barich*

The Commissioner has on numerous occasions ruled on the issue of whether a particular assignment was in the same professional capacity. There being no statutory definition of "same professional capacity," the Commissioner has described the meaning of the term. The seminal case as to the meaning of the phrase "same professional capacity" is *Barich v. San Felipe-Del Rio Consolidated Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ. 1985):

> Petitioner argues that he did not receive an offer of employment in the "same professional capacity," because he was never offered the same position he had held during the 1982-83 school year; i.e., ROTC teacher. It would not be reasonable, however, to conclude that the legislature intended that every teacher who does not receive notice of his or her proposed nonrenewal by April 1 is entitled to be employed in the exact same position the following school year. Such a holding would require a school district to actually begin nonrenewal proceedings by April 1 against every teacher it might conceivably wish to assign to a different position the following year, or face a nonrenewal claim with any reassignment effected after April 1.
> *It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "the exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual reassignment authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the*

043-R10-1211                                  9

*district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances, the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may not be placed in the capacity of a librarian; etc.*

*In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless, be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such a placement include, but are not necessarily limited to, differences in authority, duties, and salary.*

In the present case, Petitioner was employed during the 1982-83 school year as an ROTC teacher. The district's offers of employment ranged from the general (i.e., a statement that the district would comply with the Commissioner's Order and that Petitioner should "report to work" at once) to the relatively - - though not completely - - specific (i.e., references to teaching an elementary grade, eighth grade social science, high school psychology, or high school industrial arts). Nevertheless, it is clear - - and Petitioner concedes (Tr. 77-79) - - that, although the district at no time offered to reinstate Petitioner as ROTC teacher, it did offer to place him in a teaching position of some sort. Further, the uncontested testimony is that Petitioner would not suffer any loss of salary due to the placement. (See Finding of Fact No. 4). In his Post-Hearing Brief, Petitioner asserts that the other positions "are substantially different, involve different responsibilities, and require different skills." (p. 3). However, Petitioner introduced no evidence which would support this contention. More importantly, no evidence was introduced which would support a holding that it would be improper to reassign an ROTC teacher to one of the positions referred to by the district.

Under the circumstances, it is concluded that the school district unconditionally offered Petitioner a position in the "same professional capacity" for the 1983-84 school year and that Petitioner rejected that offer. Petitioner was, therefore, not employed by the district during the 1983-84 school year by choice, and he has no cognizable claim against the district for correctly noting, on March 28, 1983, that he was not then employed by the district, and for advising him that it did not intend to employ him during the 1984-85 school year.

(Emphasis added)

As shown above, the Commissioner's interpretation of the Legislature's intent is supported by the legislative history. As the bill went through the Legislature more flexibility was granted to school districts. The Commissioner held that the first question to be asked to determine whether a reassignment is in the same professional capacity is

whether the district could have contracted with the teacher for that position. This results in several conclusions. An administrator cannot be reassigned as a classroom teacher. A classroom teacher cannot be reassigned as a counselor. A counselor cannot be reassigned as a nurse. A nurse cannot be reassigned as a librarian. It should be noted that as the TCNA then read, classroom teacher and counselor were listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1):

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor or other full-time professional employee, except paraprofessional personnel, who is required to hold a valid certificate or permit.

Administrator, nurse, and librarian were not listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1). From the first substantive decision made in the first year the issue could be addressed by the Commissioner, the named positions found at Texas Education Code section 21.201(1) were not held to be professional capacities as the Commissioner used the term "administrator" that is not listed to include superintendents and assistant principals.

The Commissioner goes on to find that employing one in the same professional category is not sufficient to constitute same professional capacity in some instances. While a superintendent and an assistant elementary school principal might be in the same professional category of administrator they are not in the same professional capacity because of major distinctions in authority, duties, and salary. The Commissioner acknowledges that other factors could be considered. As to the issue directly presented in *Barich*, it was found that reassigning an ROTC teacher to another teaching position was valid because the positions were in the same professional capacity.

*Hester*

Decided just months after *Barich, Hester v. Canadian Independent School District*, Docket No. 106-R1-585 (Comm'r Educ. 1985) further sets out what is meant by "same professional capacity." Hester was employed under contract for the position

teacher/coach. The Commissioner found that Hester was employed in the professional capacity of teacher/coach and that since there was not substantial evidence to support the nonrenewal of his contract that Respondent was required to employ Hester in the same professional of teacher/coach for the next school year. It should be noted that coach was not listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1). Nonetheless, the Commissioner found that by contract the district had made teacher/coach Hester's professional capacity. How a teacher's contract defines the teacher's professional capacity is significant but not necessarily dispositive. *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1991). The Commissioner has held in several cases that a school district is bound by professional capacities such as teacher/coach and teacher/dean that it creates in its contractual relationships. If a school district hires a teacher under a term contract in a particular capacity, even if such capacity is not specifically listed in the definition of "teacher" in the TCNA, the district must rehire the teacher in that capacity for the next school year if the district does not nonrenew the teacher's contract.

Progeny of *Barich*

Through the years since 1985, the Commissioner has consistently applied the principles enunciated in *Barich*. Contracted to be a teacher or a coach, the district properly reassigned the employee from the position of middle school teacher and high school coach to the position of physical education teacher with scheduling and budgeting responsibilities. *Lieberman v. Eagle Mountain-Saginaw Independent School District*, Docket No. 192-R3-785 (Comm'r Educ. 1985). Contracted to be Teacher/Coach Football (Head football coach), the district improperly reassigned the employee to a teaching position. *Grounds v. Tolar Independent School District*, Docket No. 340-R3-786 (Comm'r Educ. 1986). Contracted to be a teacher and head coach for duties as assigned, the district properly reassigned the employee from teacher and head coach for football, basketball, and track to the position of teacher and head coach for boys'

basketball. *Reyes v. Culberson County Independent School District*, Docket No. 229-R3-787 (Comm'r Educ. 1987). Contracted to be a teacher/coach, the district properly reassigned the employee from being a teacher and football coach to being a teacher and baseball coach. *Satcher v. Florence Independent School District*, Docket No. 363-R3-786 (Comm'r Educ. 1987). Contracted to be teachers/deans, the district improperly reassigned the employees from teacher/dean positions to teacher positions. *Abbott et al. v. Ector County Independent School District*, Docket No. 081-R3-1287, 105-R3-288 (Comm'r Educ. 1991). Contracted for 220 duty days, the district properly reduced duty days to 188 days for the following school year. *Marshall v. Seguin Independent School District*, Docket No. 177-R1-690 (Comm'r Educ. 1991). Contracted as an administrator, the district properly reassigned the employee from the district wide position of Science Support Specialist to the position of high school assistant principal. *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1991). The district properly reassigned employee from the position of high school assistant principal to the position of middle school assistant principal. *Andrews v. Houston Independent School District*, Docket No. 236-R1-897 (Comm'r Educ. 1997). Contracted as a professional employee[7], the district properly reassigned the employee from the position of athletic director to the position of teacher/assistant principal. *Keith v. Tarkington Independent School District*, Docket No. 459-R3-891(Comm'r Educ. 1992). Contracted as teachers, the district's reduction in salary by itself did not place the teachers in different professional capacities. *Goedeke v. Smyer Independent School District*, Docket No. 111-R3-1292 (Comm'r Educ. 1997). Contracted as teacher/assistant band director, the district improperly reassigned the employee to a teaching position. *Salinas v. Roma Independent School District*, Docket No. 058-R3-1196 (Comm'r Educ. 1997). Contracted as an administrator, the district properly reassigned the employee from

---

[7] *Keith* does not discuss whether "professional employee" is a legitimate professional capacity. It does not conclude that because the two positions at issue were professional that the reassignment is allowable. *Keith* simply mentions what the contract at issue states.

principal of an independent middle school campus to the position of principal or assistant principal for grades 7 to 9 at a unified junior high/high school campus. *Underwood v. Rusk Independent School District*, Docket No. 062-R3-198 (Comm'r Educ. 1998). Contracted as a teacher/coach, the district properly reassigned the employee from the position of varsity coach and teacher to the position of junior high school coach and teacher. *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999). Contracted as an administrator, the district properly reassigned the employee from the district wide position of attendance coordinator to the position of middle school assistant principal. *Veliz v. Donna Independent School District*, Docket No. 011-R3-999 (Comm'r Educ. 2000). The district properly transferred the employee from one principal position to another. *Yturralde v. El Paso Independent School District*, Docket No. 001-R10-900 (Comm'r Educ. 2002). The district properly transferred the employee from the position of high school principal to the position of elementary principal. *Ramos v. El Paso Independent School District*, Docket No. 002-R10-900 (Comm'r Educ. 2002). Contracted as an administrator, the district properly reassigned the employee from the position of high school principal to the position of middle school assistant principal. *Pasqua v. Fort Stockton Independent School District*, Docket No. 011-R3-1102 (Comm'r Educ. 2004). Contracted as an administrator, the district properly reassigned the employee from a district-wide Director of Even Start to the position middle school assistant principal. *Perales v. Robstown Independent School District*, Docket Nos. 052-R10-104, 084-R3-604 (Comm'r Educ. 2006). Contracted as an administrator, the district properly reassigned the employee from a central office position to an assistant principal position. *Sanchez v. Donna Independent School District*, Docket No. 075-R10-605 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned the employees from a central office position to an assistant principal position. *Gonzalez v. Donna Independent School District*, Docket No. 074-R10-605 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned

the employee from a central office position to an assistant principal position. *Perez v. Donna Independent School District,* Docket No. 086-R1-705 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned the employee from the position of Executive Director of Special Education to the position of elementary school assistant principal. *Lehr v. Ector County Independent School District,* Docket No. 003-R3-0908 (Comm'r Educ. 2011). Contracted as professional employee, the district improperly reassigned the employee from the position of assistant principal to the position of classroom teacher. *Wheeler v. Austin Independent School District,* Docket No. 008-R3-1108 (Comm'r Educ. 2011). Contracted as a professional employee, the district properly reassigned the employee from the position of middle school principal to the position of Human Resources Coordinator. *Murillo v. Laredo Independent School District,* Docket No. 027-R3-0108 (Comm'r Educ. 2012). The district properly reassigned the employee from the position of elementary school principal to the position of Program Specialist II. *Montgomery v. Richardson Independent School District,* Docket No. 007-R10-1008 (Comm'r Educ. 2012). Contracted as a professional employee, the district improperly reassigned the employee from the position of Career Specialist to the position of teacher. *Tuck v. Alief Independent School District,* Docket No. 008-R10-1007 (Comm'r Educ. 2012). Contracted as an administrator, the district properly reassigned the employee from the position of principal to the position of assistant principal. *McCoy v. Kermit Independent School District,* Docket No. 004-R3-0908 (Comm'r Educ. 2012).

Administrators

As can be seen from the above, a great many of the same professional capacity cases involved administrators. In *Carpenter v. Wichita Falls Independent School District,* Docket No. 247-R3-491 (Comm'r Educ. 1991) the Commissioner held:

> The question presented by this appeal is the scope and reach of the Term Contract Nonrenewal Act, Texas Education Code section 21.204(b), in the context of the

reassignment of those school district personnel coming under its protections. Petitioner would have the Commissioner of Education hold that the phrase "same professional capacity" as used in the TCNA is either defined by or in some way informed by the definition of "teacher" found in § 21.201(1) of that Act. I do not believe the statutory language can permit of such an interpretation. Rather, this phrase is left undefined by the statute, and therefore its meaning is a matter for interpretation by the Commissioner, in the first instance, and by the courts. The decisions of the Commissioner (and the courts) have consistently looked to the language of the employment contract itself and attempted to give the parties the benefit of their bargain. In this case, the contract between the parties provides that the position to which Petitioner was entitled was that of a generic "administrator." Petitioner has not proven that hers was a contract of adhesion, which would clearly change the result in this case. It is true that the Commissioner has held that § 21.204(b) limits the right of the district to transfer a term contract teacher. *Barich v. San Felipe-Del Rio C.I.S.D.*, Docket No. 117-R1a-484 (Comm'r Educ. May 1985). It is possible to imagine situations where the transfer clause of an employment contract would be held to be unenforceable under § 21.204(b) [8]. However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to this law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me consistent with the policies of the TCNA.

Administrators can often be reassigned to different administrator positions, but that does not mean that they may be assigned to any administrator positions. Districts can by contract establish broad professional capacities. However, professional capacities that are too broad will not be allowed. *Tuck v. Alief Independent School District*, Docket No. 008-R10-1007 (Comm'r Educ. 2012).

Deference

If the Commissioner were to decide to issue a new interpretation of "same professional capacity" it would seem to be because his long standing interpretation was incorrect. To determine whether the Commissioner's interpretation is correct, some

---

[8] The old Texas Education Code section 21.204 is the predecessor of the current Texas Education Code section 21.206.

cannons of statutory interpretation will be considered. The standards for deferring to an agency's interpretation have been set by the Texas Supreme Court:

> If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, as there is here, we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule. *See Pub. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (Tex. 1944).

*TGS-NOPEC Geophysical v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). There is ambiguity about what the phrase "same professional capacity" means. The phrase is not defined in statute and is susceptible to multiple interpretations. The Commissioner's interpretation should be deferred to.

Further, as the Commissioner's interpretation is a long standing interpretation, the doctrine of legislative acquiescence applies:

> If an ambiguous statute that has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it. *See Grapevine Excavation, Inc. v. Md. Lloyds Ins. Co.*, 35 S.W.3d 1, 5, 43 Tex. Sup. Ct. J. 1086 (Tex. 2000) (Once the Texas Supreme Court and courts of appeals "construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 248, 34 Tex. Sup. Ct. J. 652 (Tex. 1991) ("'[A] statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction.' This rule is only applicable where there has been an affirmative long-standing administrative policy.") (quoting *Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 180, 10 Tex. Sup. Ct. J. 254 (Tex. 1967)); *Tex. Employers' Ins. Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390, 395 (Tex. 1946) ("There is another well-settled rule to guide us in the construction of a statute which is uncertain and ambiguous . . .: 'Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of verbiage, it will continue to receive the same construction.'")

*Tex. Dept. of Protective & Regulatory Services v. Mage Child Care*, 145 S.W.3d 170, 175 (Tex. 2004). The Commissioner's interpretation is long standing. It goes back over one-quarter century. It has been repeatedly affirmed.

The statute at issue has been amended multiple times since the Commissioner has issued his interpretation. The TCNA has been amended by the Legislature in 1990, 1995, 2003, and 2011. Term Contract Nonrenewal Act, 71st Leg. 6th C.S., ch. 1 § 3.14, 1990 Tex. Gen. Laws 1 (allowing the hearing to be heard by a board designated impartial hearing officer); Term Contract Nonrenewal Act, 74th Leg. R.S., ch. 260 ch. 21 subch. E and F, 1995 Tex. Gen. Law 2207 (making many changes including modifying the definition of "teacher" and allowing boards to use the Independent Hearing Examiner Process); Term Contract Nonrenewal Act, 78th Leg R.S., ch. 484 § 1, 2003 Tex. Gen. Laws 1749 (concerning distribution of district employment policies); 82nd Leg. 1st C.S., ch. 8 §§ 8-11, 2011 Tex. Gen Laws 5463 (allowing districts to hire their own hearing examiners and making several changes concerning notice). The Legislature has acquiesced in the Commissioner's interpretation of the phrase "same professional capacity."

Must Principal be a Professional Capacity?

Petitioner contends that her theory that a principal may only be reassigned to another principal position is compatible with *Barich* although she does recognize that it would require overruling other Commissioner's Decisions. Petitioner's theory rests on the premise that because the definition of "teacher" found in the TCNA references the position "principal" that "principal" is a professional capacity.

Petitioner's theory is not compatible with *Barich*. Under *Barich*, the first question is could the teacher contract for the position at issue. A principal can contract for an assistant principal position as a principal certificate is needed for either a principal or assistant principal position. 19 TEX. ADMIN. CODE § 241(d). The next question is that even if the position could be contracted for are differences in authority, duties, salary and

other factors so great that the reassignment is actually in another professional capacity. This second consideration is set out right after the issue of reassigning a superintendent to the position of assistant elementary principal is raised. Texas Education Code section 21.201(1) in the original TCNA read as follows:

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor or other full-time professional employee, except paraprofessional personnel, who is required to hold a valid certificate or permit.

If Petitioner's theory was compatible with *Barich*, the Commissioner would have said the determination of whether a superintendent may be reassigned to the position of elementary school assistant principal is a simple issue, not an issue that is "not . . . so clear." Under Petitioner's theory, since "superintendent" is found in the definition of 21.201(1), "superintendent" is a professional capacity. The result would be that a superintendent cannot be reassigned to any position that is not a superintendent position. There would be no reason to apply the standards set out in *Barich* to determine whether a superintendent could be reassigned to an assistant principal position.

Petitioner's theory does have the virtue of simplicity. If a position is named in the definition of "teacher" any reassignment would have to be in that same position. However, it would be just as simple to apply the rule that if one holds an administrator's position one can be reassigned to any administrator's position. The Commissioner's solution is more complex than Petitioner's theory, but is more faithful to the statute at issue. If the Legislature intended "same professional capacity" to mean any position listed in the definition of "teacher," the Legislature would have said so. Instead, the Legislature used an undefined phrase that it intended the Commissioner to interpret using his experience in how schools operate. The Commissioner has consistently done so since the first opportunity to interpret the phrase at issue.

Like a Superintendent?

There are no Commissioner's Decisions that directly address whether a superintendent may be reassigned to another position. There is no Commissioner's Decision that finds that a superintendent was improperly reassigned. While *Barich* holds that a superintendent cannot be reassigned to the position of assistant elementary school principal, Barich was not a superintendent and was not reassigned to an assistant principal position. There is a pre-TCNA case, *Board of Trustees of Crystal City Independent School District v. Briggs*, 486 S.W.2d 829 (Tex. App. Beaumont 1972, writ ref'd n.r.e), which determined that a reassignment from superintendent to teacher was not allowed:

> Briggs was hired as superintendent of the public schools; under the statute, it is clear that there is a vast difference in the position of superintendent of a district answerable only to the Board of Trustees and that of a teacher in the schools. §§ 16.07, 16.08 Education Code.

The court in *Briggs* found the fact that a superintendent was only answerable to the board of trustees to be highly significant.

In the recent case of *Lehr v. Ector County Independent School District*, Docket No. 003-R3-0908 (Comm'r Educ. 2011), the issue was raised whether it was appropriate to reassign the Executive Director of Special Education to the position of assistant principal. The Commissioner held:

> The change in positions is unlike the move from superintendent to assistant principal described in *Barich*. A superintendent according to statute is "the educational leader and chief executive officer of the school district." TEX. EDUC. CODE § 11.201(a). The position of superintendent is *sui generis*. There is no administrator position that compares to it. The position of Executive Director of Special Education is not mentioned in the Texas Education Code. In fact, the certification mentioned in the job description for the position is "midmanagement/supervisor" is no longer awarded.[9] Currently, the only

---

[9] Hence, it is a good thing that the job description allows for alternative qualifications. While those who received midmanagement and supervisor certifications retain them, it is not perhaps wise to limit employment to those who have achieved a certification that is no longer issued.

certifications for administrator are superintendent and principal.[10] There is no certification that an Executive Director of Special Education is required to hold under the Texas Education Code or the rules adopted under the code.

Here like in *Briggs*, the Commissioner noted that the position of superintendent is unique. A superintendent is the chief executive officer of a school district. It almost goes without saying that a superintendent is answerable only to the board of trustees. Only the board of trustees has the authority to direct a superintendent. It is not the fact that the Texas Education Code specifies many of the superintendent's duties and creates unique procedures to nonrenew a superintendent's contract that makes the superintendent's role sui generis. TEX. EDUC. CODE §§ 11.201, 21.212. It is instead the fact the superintendent is only answerable to the school board as the chief executive officer of the school district that makes the office of superintendent *sui generis*.

Petitioner is correct that principals have many duties spelled out in the Texas Education Code. This does not make the position of principal *sui generis*. That the Texas Education Code defines many duties of a principal makes the principal position a well defined species. It does not make the principal position a genus all to itself. A principal is answerable to the superintendent and often to other high administrators such as deputy and assistant superintendents. A principal is answerable to the school board as the school board can nonrenewal or terminate a principal's contract.

Further, while there is a principal certification, it is required for both being a principal and an assistant principal. 19 TEX. ADMIN. CODE § 241(d). That the same training is required to be either a principal or an assistant principal is a further indication that the position of principal is not *sui generis*. It is true that one who holds a superintendent's certificate also is qualified to hold the positions of principal and assistant principal. 19 TEX. ADMIN. CODE § 242.1(d). It is not surprising that the training required to be a superintendent would also prepare one to a principal or an assistant principal. But a superintendent is required to have more than a principal's certificate.

---

[10] 19 TEX. ADMIN. CODE ch. 241 and 242. All other administrator certifications were not issued after 2000.

One who holds only a principal's certificate is not qualified to be a superintendent. A superintendent's certificate requires significantly more training than a principal's certificate. When a principal is reassigned, a school district is not limited to assigning the principal to another principal position. *Underwood v. Rusk Independent School District*, Docket No. 062-R3-198 (Comm'r Educ. 1998), *Pasqua v. Fort Stockton Independent School District*, Docket No. 011-R3-1102 (Comm'r Educ. 2004), *Murillo v. Laredo Independent School District*, Docket No. 027-R3-0108 (Comm'r Educ. 2012), *Montgomery v. Richardson Independent School District*, Docket No. 007-R10-1008 (Comm'r Educ. 2012), and *McCoy v. Kermit Independent School District*, Docket No. 004-R3-0908 (Comm'r Educ. 2012).

Present Reassignment

In the present case, Petitioner was reassigned from the position of principal of an intermediate school to the position of assistant principal of a high school. There is little in the record that indicates what duties Petitioner had at those two positions. The record does not demonstrate that applying the Commissioner's precedent as to what is the "same professional capacity" results in a conclusion that the two positions were in different professional capacities. However, Petitioner has not raised this issue. Petitioner's claim is not that in her particular circumstance, comparing authority, duties, compensation and other relevant factors, the two positions were in separate professional capacities. Petitioner's claim is that a principal may only be reassigned to another principal position. This is not the law. As the two positions are not shown to be in different professional capacities, Respondent did not violate Texas Education Code section 21.206.

Possible Consequences

Petitioner contends that if the Commissioner does not to change his interpretation of "same professional capacity" this could lead to a situation where a school district could reassign a principal to a position that does not require a chapter 21 contract and then make the principal an at-will employee for the following school year. It should be noted

that this is not the situation the Commissioner is presented with in this case. After her reassignment Petitioner retains a chapter 21 contract.

But assuming without finding that this issue was properly raised, there are at least two major problems with this claim. Petitioner chose not to contest her reassignment under Commissioner's precedent but instead to solely argue that she could only be reassigned to a principal's position. Whether or not Respondent reassignment meets the Commissioner's standards has not been contested or ruled upon. Not contesting a reassignment based on the standards previously established by the Commissioner could result in not receiving a Chapter 21 contract, but the fault would not be with the Commissioner's interpretation of Chapter 21.

Further, the case Petitioner relies on *Harris v. Royse City Independent School District*, Docket No. 057-R1-0506 (Comm. Educ. 2009) had a very different fact situation. Harris began his employment with Royse City Independent School District by signing a contract for a non-certified administrator position that provided for renewal or nonrenewal under chapter 21 of the Texas Education Code. This is not the type of contract that Petitioner holds. Petitioner in her original assignment and her reassignment was required to hold a principal's certificate.

Conclusion

The Petition for Review should be dismissed in part and denied in part. In many cases, principals may be assigned to other administrative positions. In the present case, it is determined that Petitioner was properly reassigned in the same professional capacity.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner, under Texas Education Code section 7.057(a)(2)(A), has jurisdiction over the claims that Respondent violated Texas Education Code section

21.206(b) and based on such a violation also violated Texas Education Code section 11.20 and 19 TEX. ADMIN. CODE § 150.1021.

2.     The Commissioner, under Texas Education Code section 7.057(a)(2)(A), lacks jurisdiction over violations of school district policies.

3.     The Commissioner, under Texas Education Code section 7.057(a)(2)(A), lacks jurisdiction over the claim Respondent violated its policy FN(LOCAL).

4.     A superintendent does not violate Texas Education Code 11.201(d) when a superintendent poorly exercises an authority granted by this section.

5.     The Commissioner lacks jurisdiction over the claim that Respondent's superintendent arbitrarily and capriciously reassigned her in violation of Texas Education Code section 11.201(d)   TEX. EDUC. CODE § 7.057(a)(2)(A).

6.     If a school district fails to timely give a teacher notice of proposed nonrenewal when the teacher's contract is about to expire, the school district is required to employ the teacher in the "same professional capacity" for the following school year. A requirement to employ a teacher in the "same professional capacity" for the following school year is triggered only when a contract is about to expire and timely notice of proposed nonrenewal is not given. TEX. EDUC. CODE § 21.206(b).

7.     Petitioner's claim that Respondent failed to employ her in the same professional capacity is ripe only as to the 2011-2012 school year.

8.     One can be entitled to the protections of Texas Education Code Chapter 21, subchapter E based solely on a contract or district policy.  One does not need to hold a position described in the first sentence of Texas Education Code section 21.201(1) to be entitled to a Chapter 21 term contract.

9.     The positions described in the first sentence of Texas Education Code section 21.201(1) may or may not be professional capacities for purposes of Texas Education Code section 21.206(b).

10. The fact that the position of "principal" is listed in the first sentence of Texas Education Code section 21.201(1) does not mean that if one is employed by a school district as a principal under a term contract that one is employed under the professional capacity of principal. TEX. EDUC. CODE § 21.206(b).

11. A contract can establish a teacher's professional capacity under Texas Education Code section 21.206(b) if the professional capacity is not impermissibly broad. Whether a professional capacity is impermissibly broad is determined by comparing differences in authority, duties, and salary and other relevant factors. In many cases, a professional capacity of "administrator" will not be impermissibly broad for a reassignment.

12. Petitioner's professional capacity under Texas Education Code section 21.206(b) is administrator.

13. As Petitioner did not contest that her contractual professional capacity of administrator is impermissibly broad under the standards set out in Conclusion of Law No. 11, Petitioner has not raised this issue.

14. As the fact that a term contract employee is employed in a principal position does not make the employee's professional capacity "principal," Respondent did not improperly reassign Petitioner to a non-principal position in violation of Texas Education Code section 21.206(b).

15. Respondent did not reassign Petitioner in violation of Texas Education Code section 21.206(b)

16. The Petition for Review should be denied in part and dismissed in part.

Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Edcuation, it is hereby

ORDERED that the Petitioner's appeal be, and is hereby, denied in part and dismissed in part.

SIGNED AND ISSUED this 19th day of December, 2013.

MICHAEL WILLIAMS
COMMISSIONER OF EDUCATION

# Crosby ISD's Appendix

# TAB 2

| | | |
|---|---|---|
| HERMENIA JENKINS,<br>*Plaintiff,* | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | TRAVIS COUNTY, TEXAS |
| CROSBY INDEPENDENT<br>SCHOOL DISTRICT and<br>MICHAEL L. WILLIAMS<br>THE STATE COMMISSIONER<br>OF EDUCATION,<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§ | 200th JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

FEB 2 6 2015

At 10:20 A.M.
Velva L. Price, District Clerk

## FINAL JUDGMENT

On December 4, 2014, came to be heard and considered the cause of Plaintiff's suit for judicial review of an administrative decision of the Texas Commissioner of Education issued in Texas Education Agency Docket No. 043-R10-1211. Having considered the administrative record, pleadings, briefs, and arguments of counsel, the Court affirms the Commissioner's decision.

IT IS THEREFORE ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that all taxable costs of court are assessed against the party who incurred them; that all remedies not specifically granted herein are denied; and that this judgment disposes of all claims and all parties and is final and appealable.

SIGNED on this ___26th___ day of ___February___, 2015.

THE HONORABLE AMY CLARK MEACHUM

Approved as to form:

/Kevin F. Lungwitz
State Bar No. 12698790
The Lungwitz Law Firm, P.C.
3005 S. Lamar Blvd., Suite D-109-362
Austin, Texas 78704-4785
Phone: (512) 461-0188
Fax: (866) 739-7138
kevin@lungwitzlaw.com
FOR PLAINTIFF HERMENIA JENKINS

David B. Hodgins
State Bar No. 09775530
Rebecca B. Weimer
State Bar No. 24062597
Thompson & Horton LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Phone: (713) 554-6745
Fax: (713) 583-8245
dhodgins@thompsonhorton.com
rweimer@thompsonhorton.com
FOR DEFENDANT CROSBY ISD

Andrew Lutostanski
Assistant Attorney General
State Bar No. 24072217
Office of the Attorney General of Texas
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711-2548
Phone: (512) 475-4200
Fax: (512) 320-0167
andrew.lutostanski@texasattorneygeneral.gov
FOR DEFENDANT COMMISSIONER

# Crosby ISD's Appendix

# TAB 3

| | | |
|---|---|---|
| IMELDA MURILLO | § | BEFORE THE |
| | § | |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| | § | |
| LAREDO | § | |
| INDEPENDENT SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Imelda Murillo, complains of actions and decisions of Respondent, Laredo Independent School District. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to preside over this cause. Petitioner is represented by Mark W. Robinett, Attorney at Law, Austin, Texas. Respondent is represented by J. Francisco Tamez, Attorney at Law, Laredo, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be dismissed in part and denied in part. Exceptions and replies were timely filed and considered.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1.      Petitioner was employed under a chapter 21, subchapter E term contract for the 2006-2007 school year. Petitioner was employed as a middle school principal for the first part of the 2006-2007 school year.

2.      On April 17, 2007, Petitioner signed a chapter 21, subchapter E term contract with Respondent for the 2007-2008 school year. This was a 12-month contract

---

[1] *See* 19 TEX. ADMIN. CODE § 157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

TASB

with a beginning date of July 2, 2007. The contract states that it is **"For Professional Employee"** but does not further specify what Petitioner's duties will be.

3.   On June 21, 2007, Petitioner was informed that effective immediately she was reassigned to the position of Human Resources Coordinator. This event occurred during the 2007-2008 school year.

4.   June 27, 2007, Petitioner requested a Level I conference on her grievance which included claims that Respondent changed her professional capacity in violation of Texas Education Code section 21.206 and demoted her.

## Discussion

Petitioner contends that Respondent changed her professional capacity in violation of Texas Education Code section 21.206 and demoted her.

### Change of Professional Capacity

Petitioner contends that Respondent changed her professional capacity from principal to Human Resources Coordinator in violation of Texas Education Code section 21.206:

> (a)   Not later than the 45th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract.
> (b)   The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

Petitioner had a term contract for the 2006-2007 school year. Petitioner was not proposed for nonrenewal at the end of the 2006-2007 school year. Therefore, Respondent was required to employ Petitioner during the 2007-2008 school year in same professional capacity as she was employed during the 2006-2007 school year. During the 2006-2007 school year Petitioner was employed both as a middle school principal and as the Human Resources Coordinator. Petitioner contends that Respondent had to employ her as a principal for the 2007-2008 school year.

027-R3-0108                                    2                                    TASB

The basis for the claim that Respondent would have to employ Petitioner for the 2007-2008 school year in only one of the positions Petitioner held under her 2006-2007 contract is not clear. A school district does not violate Texas Education Code section 21.206 when a term contract expires without notice of proposed nonrenewal and the district employs the teacher in a position for the next school year that the teacher held under the contract during the previous school year. If a teacher holds the same position in both school years, the teacher's professional capacity has not changed. Because Respondent employed Petitioner for the 2007-2008 school in a position that Petitioner held under her 2006-2007 contract, Respondent did not violate Texas Education Code section 21.206.

Demotion

Petitioner contends that she was demoted. The Texas Education Code does not generally prohibit districts from demoting teachers. But the Commissioner may have jurisdiction over a claim that a school has demoted a teacher in violation of the teacher's written contract. TEX. EDUC. CODE § 7.057(a)(2)(B). However, violations of some sections of the Texas Education Code could also result in a demotion. For example, if mid-year a district decided to pay teachers less than required by Texas Education Code section 21.402, the Minimum Salary Schedule, this could be both a violation of school laws of this state and a demotion in violation of a contract. Since, Petitioner fails to cite to a statute that may have been violated as to her claim of demotion, the issue for the Commissioner to decide is whether a demotion occurred that violated Petitioner's written employment contract.

As noted above, Petitioner's change in positions occurred during the 2006-2007 school year. Petitioner's 2006-2007 contract is not in the record nor is there significant discussion of the contract. Petitioner has failed to indicate in pleading and briefing what provision of Petitioner's 2006-2007 contract may have been violated. While the 2007-2008 contract is in the record, Petitioner has failed to indicate in pleading and briefing

TASB

which provision of this contract may have been violated. As Petitioner has failed to specify which provision of Petitioner's contract that Respondent may have violated, the Commissioner lacks jurisdiction over Petitioner's demotion claim.

Conclusion

Respondent did not violate Texas Education Code section 21.206. The Commissioner lacks jurisdiction over Petitioner's demotion claim.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner of Education has jurisdiction over this cause under Texas Education Code section 7.057(a)(2)(A).

2. The Commissioner of Education lacks jurisdiction over this cause under Texas Education Code section 7.057(a)(2)(B).

3. A demotion claim is normally brought under Texas Education Code section 7.057(a)(2)(B) because there is no general prohibition to demotions under the school laws of this state.

4. Petitioner's demotion claim is a contract claim.

5. Because Petitioner has failed the identify a potential violation of her written employment contract that causes or would cause monetary harm in connection with her demotion claim, the Commissioner lacks jurisdiction over Petitioner's demotion claim.

6. Texas Education Code section 21.206 requires a school district that does not propose the nonrenewal of an expiring term contract to employ the teacher in the same professional capacity for the following school year.

TASB

7. A school district does not violate Texas Education Code section 21.206 when a term contract expires without notice of proposed nonrenewal and the district employs the teacher in a position for the next school year that the teacher held under the contract during the previous school year.

8. Because Respondent employed Petitioner for the 2007-2008 school year in a position that Petitioner held under her 2006-2007 contract, Respondent did not violate Texas Education Code section 21.206.

9. The Petition for Review should be dismissed in part and denied in part.

### Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal be, and is hereby, dismissed in part and denied in part.

SIGNED AND ISSUED this 13th day of April, 2012.

_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

TASB

# Crosby ISD's Appendix

# TAB 4

| | | |
|---|---|---|
| TAJUANA HOLMAN | § | BEFORE THE |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| ARP INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE DESIGNEE OF THE COMMISIONER

### Statement of the Case

Petitioner, Tajuana Holman, appeals the action of Respondent, Arp Independent School District, concerning her grievance. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education. Petitioner appeared *pro se.* Respondent is represented by John C. Hardy, Attorney at Law, Tyler, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be dismissed. No exceptions were filed.

### Findings of Fact

The following Findings of Fact are not disputed:

1. Respondent has established a uniform policy only for its middle school.

2. None of Petitioner's children are currently attending Respondent's middle school.

### Discussion

Petitioner contends that Respondent should grant an exception to the school uniform policy. Respondent maintains that the issue is not ripe.

### Ripeness

Respondent has adopted a school uniform policy under Texas Education Code section 11.162 for its middle school. This provision of the Education Code allows parents to opt out of a uniform requirement if the parent states a bona fide religious or philosophical objection to uniforms. TEX. EDUC. CODE § 11.162(c). Petitioner has no

TASB

children at the Arp Middle School this year but next year it is likely that one of her children may attend Arp Middle School. A case is ripe if there is a concrete injury, a remote injury is not sufficient. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-852 (Tex. 2000). Ripeness is a component of subject matter jurisdiction. *Id.* This case is not ripe because it is uncertain whether Arp Middle School will have a uniform policy next year and it is not certain that Respondent's child will be attending Arp Middle School next year. Although it is likely that the child will be attending the middle school, such events as the family moving out of district could occur. For these reasons, this case is not ripe.

Conclusion

This case should be dismissed because it is not ripe.

### Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as designee of the Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner lacks jurisdiction to hear this cause under Texas Education Code section 7.057.

2. Ripeness is a component of subject matter jurisdiction.

3. Because Petitioner's children are not currently affected by Respondent's uniform policy, this case is not ripe.

4. This case should be dismissed for lack of jurisdiction. 19 TEX. ADMIN. CODE § 157.1056(a).

TASB

<u>ORDER</u>

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as designee of the Commissioner, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DISMISSED.

SIGNED AND ISSUED this 28th day of June, 2007.

ROBERT SCOTT
CHIEF DEPUTY COMMISSIONER
BY DESIGNATION

#093-R8-805                    -3-

TASB

# Crosby ISD's Appendix

# TAB 5

DOCKET NO. 113-R10-0812

| PEGGY GUSTAFSON | § | BEFORE THE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| CANUTILLO | § | |
| INDEPENDENT SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Peggy Gustafson, appeals the denial of her grievance by Respondent, Canutillo Independent School District. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to preside over this cause. Petitioner is represented by Jorge Luis Rivas, Jr., Attorney at Law, El Paso, Texas. Respondent is represented by Steven J. Blanco and Jerry R. Wallace, Attorneys at Law, El Paso, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be denied in part and dismissed in part. Exceptions and replies were timely filed and considered.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1.     Petitioner was employed by Respondent under a two year term contract for the 2011-2012 through the 2012-2013 school years for an administrator position.

2.     Petitioner served as the principal of the Northwest Early College High School from January 2008 until June, 7, 2011.

3.     On June 7, 2011, Petitioner was reassigned as assistant principal for the Canutillo Elementary School.

---

[1] See 19 TEX. ADMIN. CODE §157.1073(h); Bosworth v. East Central Independent School District, Docket No. 090-R1-803 (Comm'r Educ. 2003).

4.  Petitioner earned the same salary for the 2011-2012 school year as she had earned for the 2010-2011 school year, which was $78,600. However, under Respondent's salary schedule Petitioner's salary for the 2011-2012 school year should have been $68,406.84.

## Discussion

Petitioner asserts that Respondent improperly reassigned her and demoted her. Petitioner makes three claims: that she was not reassigned in the same professional capacity, that she was transferred from a principal to an assistant principal position and that the position had a lesser pay, and that the transfer violates certain statutes. Respondent contends that Petitioner's new position is in the same professional capacity. Respondent also contends that the Commissioner lacks jurisdiction over some of Petitioner's claims.

### Jurisdiction

The Petition for Review alleges that Respondent violated the Texas Whistleblower Act and Chapter 21 of the Texas Labor Code. Under Texas Education Code section 7.057(a)(2) the Commissioner has jurisdiction over violations of the "school laws of this state" and violations of certain written employment contracts. The "school laws of this state" are defined as the first two titles of the Texas Education Code and the rules adopted under those titles. TEX. EDUC. CODE § 7.057(f)(2). The Texas Whistleblower Act and the Texas Labor Code do not meet the definition of the "school laws of this state." The Commissioner lacks jurisdiction over the Texas Whistleblower Act and the Texas Labor Code under Texas Education Code section 7.057(a)(2)(A).

In many cases, statutes existing when contracts are entered into are incorporated into the contracts. *Central Education Agency v. George West Indep. Sch. Dist.* 783 S.W.2d 200, 201 (Tex. 1989). However, as the Commissioner held in *Barborak v. Oakwood Independent School District*, Docket No. 224-R3-797 (Comm'r Educ. 1999), when a statute is incorporated into a contract, the whole statute including the enforcement mechanism is incorporated. That enforcement mechanism must be exhausted before a case

113-R10-0812                                    2

TASB

can be brought to the Commissioner. As Petitioner has not exhausted the statutory enforcement mechanisms, the Commissioner lacks jurisdiction under Texas Education Code section 7.057(a)(2)(B) over Petitioner's claims under the Texas Whistleblower Act and the Texas Labor Code.

## Same Professional Capacity

As a practical matter, it is very likely that if one is transferred from a principal position to an assistant principal position, that under the school district's salary schedule one will be earning a lesser salary. So while this case cannot be viewed as solely asserting that a principal cannot be transferred to an assistant principal position, it is very similar to such a case.

## Must Principals Remain Principals

Petitioner argues that if a principal's contract is not nonrenewed, that a school district is limited to reassigning a principal to another principal position for the next school year. Petitioner does not argue that comparing the particular duties and responsibilities of the two positions leads to the conclusion that the two positions are not in the same professional capacity. Petitioner argues that the only position that is in the same professional capacity of a principal is the position of principal. Petitioner's argument would require Commissioner's precedent to be overturned. Precedent should not be lightly overturned. Teachers and school districts base important decisions in reliance on Commissioner's Decisions. But the fundamental principle of statutory construction is to give effect to the intention of the Legislature. If the Commissioner's long standing interpretation of the statute is in conflict with the intention of the Legislature, the Commissioner's interpretation should change.

## TCNA

The Term Contract Nonrenewal Act[2] ("TCNA") was passed by the 67th Legislature in 1981[3]. Term Contract Nonrenewal Act, 67th Leg., R.S., ch. 765, 1981 Tex. Gen Laws. This law fundamentally changed teacher[4] contracts. Before the TCNA many districts hired teachers and administrators on one-year contracts. When the contract term expired, the district was not required to offer a contract for the new school year. *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex. 1985). Prior to the passage of the TCNA, school districts were not required to establish policy reasons for ending a contractual relationship, to give teachers the reasons why ending the contractual relationship was proposed, and to provide teachers with the opportunity for a hearing where the administration had the burden of proof to show that the teacher's contract should be nonrenewed. A key passage of the TCNA, that was then numbered section 21.204, required a district that did not nonrenew a teacher's contract to hire the teacher for the next school year:

Hearing
> (a) In the event the board of trustees receives a recommendation for nonrenewal, the board after consideration of written evaluations required by Section 21.202 of this subchapter and the reasons for the recommendation, shall in its sole discretion, either reject the recommendation or shall give the teacher written notice of the proposed nonrenewal on or before April 1 proceeding the end of the employment fixed in the contract.
> (b) *In the event of failure to give such notice of proposed nonrenewal within the time herein specified, the board shall thereby elect to employ such employee in the same professional capacity for the succeeding school year.*
> (c) The notice of proposed nonrenewal required in this section shall contain a statement of all the reasons for such proposed action.

(Emphasis added). If a teacher's contract was not nonrenewed, the school board was not only required to hire the teacher for the next school year but also to employ the teacher in

---

[2] Section 1 of SB 341 itself provided that "this act shall be known as "The Term Contract Nonrenewal Act."

[3] The TCNA became effective on August 31, 1981. However, because most contracts for the 1981-1982 school year had already been signed by that date, the TCNA really became operational for the 1982-1983 school year. That makes the 1984-1985 school year, the first time the issue of whether a teacher was rehired in the same professional capacity could actually be raised.

[4] From the beginning, the TCNA has used an expansive definition of "teacher" that includes many who are not normally referred to as teachers.

113-R10-0812                                           4



the same professional capacity for the next school year. The fundamental dispute in this case is over the meaning of the phrase "same professional capacity."

Legislative History

The legislative history of the TCNA[5] sheds some light on the meaning of the phrase "same professional capacity. Senate Bill 341 created the TCNA. As originally filed SB 341 was far more ambitious than the TCNA which became law. Under SB 341 as filed, a term or continuing contract could only be ended for "just cause." The contract could only be ended after the teacher was given written notice of deficiencies, assistance, and reasonable time for improvement. Evidence against a teacher could only be used if it was promptly brought to the teacher's attention. The hearing was to be held before an attorney selected by both parties. The hearing examiner's decision was final in that there was no appeal to the board or the Commissioner, but the hearing examiner's decision was appealable to district court under the Administrative Procedures and Texas Register Act.

More to the point of the current controversy, SB 341 as filed defined "demotion" in an expansive manner:

> . . . an involuntary reduction of a teacher to a position of lesser rank, responsibility, or compensation, or the reassignment of a teacher outside the scope of the teacher's teaching certificate or major or minor field of study.

Any loss of rank, responsibility, or compensation constituted a demotion. All of the procedures for ending a contract described in the preceding paragraph also applied when a teacher was proposed for demotion. Demotion could only occur after just cause was proved at a hearing. SB 341 made it through the Senate in substantially the same form as it was filed.

In the House, SB 341 became the TCNA. The House Education Committee passed its substitute for SB 341 with the following language in Section 21.204(b).

---

[5] The relevant legislative history may be found at the website for the Legislative Reference Library of Texas. http://www.lrl.state.tx.us/index.cfm.

> In the event of failure to give such notice of proposed nonrenewal within the time herein specified, the board of trustees shall thereby elect to employ such employee in the same capacity for the succeeding school year.

The meaning of the phrase "same capacity" is not defined in the Committee Substitute. "Same capacity" could perhaps be interpreted broadly to mean in a particular case: the fifth grade English teacher at Davis Elementary School. It could perhaps be interpreted strictly to mean any classroom teaching position. When SB 341 was heard by the House on Second Reading an amendment was made to include the word "professional" between the words "same" and "capacity." No definition was added for the phrase "same professional capacity."

### Barich

The Commissioner has on numerous occasions ruled on the issue of whether a particular assignment was in the same professional capacity. There being no statutory definition of "same professional capacity," the Commissioner has described the meaning of the term. The seminal case as to the meaning of the phrase "same professional capacity" is *Barich v. San Felipe-Del Rio Consolidated Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ. 1985):

> Petitioner argues that he did not receive an offer of employment in the "same professional capacity," because he was never offered the same position he had held during the 1982-83 school year; i.e., ROTC teacher. It would not be reasonable, however, to conclude that the legislature intended that every teacher who does not receive notice of his or her proposed nonrenewal by April 1 is entitled to be employed in the exact same position the following school year. Such a holding would require a school district to actually begin nonrenewal proceedings by April 1 against every teacher it might conceivably wish to assign to a different position the following year, or face a nonrenewal claim with any reassignment effected after April 1.
>
> *It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "the exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual reassignment authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the*

TASB

*teacher was assigned the previous year, as long as the position is one to which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances, the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may not be placed in the capacity of a librarian; etc.*

*In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless, be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such a placement include, but are not necessarily limited to, differences in authority, duties, and salary.*

In the present case, Petitioner was employed during the 1982-83 school year as an ROTC teacher. The district's offers of employment ranged from the general (i.e., a statement that the district would comply with the Commissioner's Order and that Petitioner should "report to work" at once) to the relatively - - though not completely - - specific (i.e., references to teaching an elementary grade, eighth grade social science, high school psychology, or high school industrial arts). Nevertheless, it is clear - - and Petitioner concedes (Tr. 77-79) - - that, although the district at no time offered to reinstate Petitioner as ROTC teacher, it did offer to place him in a teaching position of some sort. Further, the uncontested testimony is that Petitioner would not suffer any loss of salary due to the placement. (See Finding of Fact No. 4). In his Post-Hearing Brief, Petitioner asserts that the other positions "are substantially different, involve different responsibilities, and require different skills." (p. 3). However, Petitioner introduced no evidence which would support this contention. More importantly, no evidence was introduced which would support a holding that it would be improper to reassign an ROTC teacher to one of the positions referred to by the district.

Under the circumstances, it is concluded that the school district unconditionally offered Petitioner a position in the "same professional capacity" for the 1983-84 school year and that Petitioner rejected that offer. Petitioner was, therefore, not employed by the district during the 1983-84 school year by choice, and he has no cognizable claim against the district for correctly noting, on March 28, 1983, that he was not then employed by the district, and for advising him that it did not intend to employ him during the 1984-85 school year.

(Emphasis added)

As shown above, the Commissioner's interpretation of the Legislature's intent is supported by the legislative history. As the bill went through the Legislature, more flexibility was granted to school districts. The Commissioner held that the first question to be asked to determine whether a reassignment is in the same professional capacity is

113-R10-0812                7

whether the district could have contracted with the teacher for that position. This results in several conclusions. An administrator cannot be reassigned as a classroom teacher. A classroom teacher cannot be reassigned as a counselor. A counselor cannot be reassigned as a nurse. A nurse cannot be reassigned as a librarian. It should be noted that as the TCNA then read, classroom teacher and counselor were listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1):

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor or other full-time professional employee, except paraprofessional personnel, who is required to hold a valid certificate or permit.

Administrator, nurse, and librarian were not listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1). From the first substantive decision made in the first year the issue could be addressed by the Commissioner, the named positions found at Texas Education Code section 21.201(1) were not held to be professional capacities as the Commissioner used the term "administrator" that is not a listed term to include superintendents and assistant principals.

The Commissioner goes on to find that employing one in the same professional category is not sufficient to constitute same professional capacity in some instances. While a superintendent and an assistant elementary school principal might be in the same professional category of administrator, they are not in the same professional capacity because of major distinctions in authority, duties, and salary. The Commissioner acknowledges that other factors could be considered. As to the issue directly presented in *Barich*, it was found that reassigning an ROTC teacher to another teaching position was valid because the positions were in the same professional capacity.

*Hester*

Decided just months after *Barich*, *Hester v. Canadian Independent School District*, Docket No. 106-R1-585 (Comm'r Educ. 1985) further sets out what is meant by "same professional capacity." Hester was employed under contract for the position teacher/coach.

TASB

The Commissioner found that Hester was employed in the professional capacity of teacher/coach and that since there was not substantial evidence to support the nonrenewal of his contract that Respondent was required to employ Hester in the same professional of teacher/coach for the next school year. It should be noted that "coach" was not listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1). Nonetheless, the Commissioner found that by contract the district had made teacher/coach Hester's professional capacity. How a teacher's contract defines the teacher's professional capacity is significant but not necessarily dispositive. *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1991). The Commissioner has held in numerous cases that a school district is bound by professional capacities such as teacher/coach and teacher/dean that it creates in its contractual relationships. If a school district hires a teacher under a term contract in a particular capacity, even if such capacity is not specifically listed in the definition of "teacher" in the TCNA, the district must rehire the teacher in that capacity for the next school year if the district does not nonrenew the teacher's contract.

Progeny of *Barich*

Through the years since 1985, the Commissioner has consistently applied the principles enunciated in *Barich*. Contracted to be a teacher or a coach, the district properly reassigned the employee from the position of middle school teacher and high school coach to the position of physical education teacher with scheduling and budgeting responsibilities. *Lieberman v. Eagle Mountain-Saginaw Independent School District*, Docket No. 192-R3-785 (Comm'r Educ. 1985). Contracted to be Teacher/Coach Football (Head football coach), the district improperly reassigned the employee to a teaching position. *Ground v. Tolar Independent School District*, Docket No. 340-R3-786 (Comm'r Educ. 1986). Contracted to be a teacher and head coach for duties as assigned, the district properly reassigned the employee from teacher and head coach for football, basketball, and track to the position of teacher and head coach for boys' basketball. *Reyes v. Culberson*



*County Independent School District*, Docket No. 229-R3-787 (Comm'r Educ. 1987). Contracted to be a teacher/coach, the district properly reassigned the employee from being a teacher and football coach to being a teacher and baseball coach. *Satcher v. Florence Independent School District*, Docket No. 363-R3-786 (Comm'r Educ. 1987). Contracted to be teachers/deans, the district improperly reassigned the employees from teacher/dean positions to teacher positions. *Abbott et al. v. Ector County Independent School District*, Docket No. 081-R3-1287, 105-R3-288 (Comm'r Educ. 1991). Contracted for 220 duty days, the district properly reduced duty days to 188 days. *Marshall v. Seguin Independent School District*, Docket No. 177-R1-690 (Comm'r Educ. 1991). Contracted as an administrator, the district properly reassigned the employee from the district wide position of Science Support Specialist to the position of high school assistant principal. *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1991). The district properly reassigned employee from the position of high school assistant principal to the position of middle school assistant principal. *Andrews v. Houston Independent School District*, Docket No. 236-R1-897 (Comm'r Educ. 1997). Contracted as a professional employee[6], the district properly reassigned the employee from the position of athletic director to the position of teacher/assistant principal. *Keith v. Tarkington Independent School District*, Docket No. 459-R3-891(Comm'r Educ. 1992). Contracted as teachers, the district's reduction in salary by itself did not place the teachers in different professional capacities. *Goedeke v. Smyer Independent School District*, Docket No. 111-R3-1292 (Comm'r Educ. 1997). Contracted as teacher/assistant band director, the district improperly reassigned the employee to a teaching position. *Salinas v. Roma Independent School District*, Docket No. 058-R3-1196 (Comm'r Educ. 1997). Contracted as an administrator, the district properly reassigned the employee from principal of an independent middle school campus to the position of principal for grades 7 to 9 at a unified

---

[6] *Keith* does not discuss whether "professional employee" is a legitimate professional capacity. It does not conclude that because the two positions at issue were professional that the reassignment is allowable. *Keith* simply mentions what the contract at issue states.

junior high/high school campus. *Underwood v. Rusk Independent School District*, Docket No. 062-R3-198 (Comm'r Educ. 1998). Contracted as a teacher/coach, the district properly reassigned the employee from the position of from varsity coach and teacher to the position of junior high school coach and teacher. *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999). Contracted as an administrator, the district properly reassigned the employee from the district wide position of attendance coordinator to the position of middle school assistant principal. *Veliz v. Donna Independent School District*, Docket No. 011-R3-999 (Comm'r Educ. 2000). The district properly transferred the employee from one principal position to another. *Yturralde v. El Paso Independent School District*, Docket No. 001-R10-900 (Comm'r Educ. 2002). The district properly transferred the employee from the position of high school principal to the position of elementary principal. *Ramos v. El Paso Independent School District*, Docket No. 002-R10-900 (Comm'r Educ. 2002). Contracted as an administrator, the district properly reassigned the employee from the position of high school principal to the position of middle school assistant principal. *Pasqua v. Fort Stockton Independent School District*, Docket No. 011-R3-1102 (Comm'r Educ. 2004). Contracted as an administrator, the district properly reassigned the employee from a district-wide Director of Even Start to the position of middle school assistant principal. *Perales v. Robstown Independent School District*, Docket Nos. 052-R10-104, 084-R3-604 (Comm'r Educ. 2006). Contracted as an administrator, the district properly reassigned the employee from a central office position to an assistant principal position. *Sanchez v. Donna Independent School District*, Docket No. 075-R10-605 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned the employee from a central office position to an assistant principal position. *Gonzalez v. Donna Independent School District*, Docket No. 074-R10-605 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned the employee from a central office position to an assistant principal position. *Perez v. Donna Independent School District*, Docket No. 086-R1-705 (Comm'r Educ. 2007). Contracted

TASB

as an administrator, the district properly reassigned the employee from the position of Executive Director of Special Education to the position of elementary school assistant principal. *Lehr v. Ector County Independent School District*, Docket No. 003-R3-0908 (Comm'r Educ. 2011). Contracted as a professional employee, the district improperly reassigned the employee from the position of assistant principal to the position of classroom teacher. *Wheeler v. Austin Independent School District*, Docket No. 008-R3-1108 (Comm'r Educ. 2011). Contracted as a professional employee, the district properly reassigned the employee from the position of middle school principal to the position of Human Resources Coordinator. *Murillo v. Laredo Independent School District*, Docket No. 027-R3-0108 (Comm'r Educ. 2012). The district properly reassigned the employee from the position of elementary school principal to the position of Program Specialist II. *Montgomery v. Richardson Independent School District*, Docket No. 007-R10-1008 (Comm'r Educ. 2012). Contracted as a professional employee, the district improperly reassigned the employee from the position of Career Specialist to the position of teacher. *Tuck v. Alief Independent School District*, Docket No. 008-R10-1007 (Comm'r Educ. 2012). Contracted as an administrator, the district properly reassigned the employee from the position of principal to the position of assistant principal. *McCoy v. Kermit Independent School District*, Docket No. 004-R3-0908 (Comm'r Educ. 2012).

Administrators

As can be seen from the above, a great many of the same professional capacity cases involved administrators. In *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1991) the Commissioner held:

> The question presented by this appeal is the scope and reach of the Term Contract Nonrenewal Act, Texas Education Code section 21.204(b), in the context of the reassignment of those school district personnel coming under its protections. Petitioner would have the Commissioner of Education hold that the phrase "same professional capacity" as used in the TCNA is either defined by or in some way informed by the definition of "teacher" found in § 21.201(1) of that Act. I do not believe the statutory language can permit of such an interpretation. Rather, this

TASB

phrase is left undefined by the statute, and therefore its meaning is a matter for interpretation by the Commissioner, in the first instance, and by the courts. The decisions of the Commissioner (and the courts) have consistently looked to the language of the employment contract itself and attempted to give the parties the benefit of their bargain. In this case, the contract between the parties provides that the position to which Petitioner was entitled was that of a generic "administrator." Petitioner has not proven that hers was a contract of adhesion, which would clearly change the result in this case. It is true that the Commissioner has held that § 21.204(b) limits the right of the district to transfer a term contract teacher. *Barich v. San Felipe-Del Rio C.I.S.D.*, Docket No. 117-R1a-484 (Comm'r Educ. May 1985). It is possible to imagine situations where the transfer clause of an employment contract would be held to be unenforceable under § 21.204(b) [7]. However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to this law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me consistent with the policies of the TCNA.

Administrators can often be reassigned to different administrator positions, but that does not mean that they may be assigned to any administrator positions. Districts can by contract establish broad professional capacities. However, professional capacities that are too broad will not be allowed. *Tuck v. Alief Independent School District*, Docket No. 008-R10-1007 (Comm'r Educ. 2012).

Deference

If the Commissioner were to decide to issue a new interpretation of "same professional capacity" it would seem to be because his long standing interpretation was incorrect. To determine whether the Commissioner's interpretation is correct, some cannons of statutory interpretation will be considered. The standards for deferring to an agency's interpretation have been set by the Texas Supreme Court:

---

[7] The old Texas Education Code section 21.204 is the predecessor of the current Texas Education Code section 21.206.

> If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, as there is here, we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule. *See Pub. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (Tex. 1944).

*TGS-NOPEC Geophysical v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). There is ambiguity about what the phrase "same professional capacity" means. The phrase is not defined in statute and is susceptible to multiple interpretations. The Commissioner's interpretation should be deferred to.

Further, as the Commissioner's interpretation is a long standing interpretation, the doctrine of legislative acquiescence applies:

> If an ambiguous statute that has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it. *See Grapevine Excavation, Inc. v. Md. Lloyds Ins. Co.*, 35 S.W.3d 1, 5, 43 Tex. Sup. Ct. J. 1086 (Tex. 2000) (Once the Texas Supreme Court and courts of appeals "construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 248, 34 Tex. Sup. Ct. J. 652 (Tex. 1991) ("'[A] statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction.' This rule is only applicable where there has been an affirmative long-standing administrative policy.") (quoting *Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 180, 10 Tex. Sup. Ct. J. 254 (Tex. 1967)); *Tex. Employers' Ins. Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390, 395 (Tex. 1946) ("There is another well-settled rule to guide us in the construction of a statute which is uncertain and ambiguous . . . .: 'Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of verbiage, it will continue to receive the same construction.'")

*Tex. Dept. of Protective and Regulatory Services v. Megs Child Care*, 145 S.W.3d 170, 176 (Tex. 2004). The Commissioner's interpretation is long standing. It goes back over one-quarter century. It has been repeatedly affirmed.

The statute at issue has been amended multiple times since the Commissioner has issued his interpretation. The TCNA has been amended by the Legislature in 1990, 1995, 2003, and 2011. Term Contract Nonrenewal Act, 71st Leg. 6th C.S., ch. 1 § 3.14, 1990 Tex.

Gen. Laws 1 (Allowing the hearing to be heard by a board designated impartial hearing officer); Term Contract Nonrenewal Act, 74th Leg. R.S., ch. 260 ch. 21 subch. E and F, 1995 Tex. Gen. Law 2207 (Making many changes including modifying the definition of "teacher" and allowing boards to use the Independent Hearing Examiner Process); Term Contract Nonrenewal Act, 78th Leg R.S., ch. 484 § 1, 2003 Tex. Gen. Laws 1749 (Concerning distribution of district employment policies); 82nd Leg. 1st C.S., ch. 8 §§ 8-11, 2011 Tex. Gen Laws 5463 (Allowing districts to hire their own hearing examiners and making several changes concerning notice). The Legislature has acquiesced in the Commissioner's interpretation of the phrase "same professional capacity."

Must Principal be a Professional Capacity?

It could be argued that the theory that a principal may only be reassigned to another principal position is compatible with *Barich*. Such a theory rests on the premise that because the definition of "teacher" found in the TCNA references the position "principal", that "principal" is a professional capacity.

This theory is not compatible with *Barich*. Under *Barich*, the first question is could the teacher contract for the position at issue. The next question is that even if the position could be contracted for are differences in authority, duties, salary and other factors so great that the reassignment is actually in another professional capacity. This second consideration is set out right after the issue of reassigning a superintendent to the position of assistant elementary principal is raised. Texas Education Code section 21.201(1) in the original TCNA read as follows:

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor or other full-time professional employee, except paraprofessional personnel, who is required to hold a valid certificate or permit.

If this theory were compatible with *Barich*, the Commissioner would have said the determination of whether a superintendent may be reassigned to the position of elementary school assistant principal is a simple issue, not an issue that is "not . . . so clear." Under

TASB

this theory, since "superintendent" is found in the definition of "teacher" in section 21.201(1), "superintendent" is a professional capacity. The result would be that a superintendent cannot be reassigned to any position that is not a superintendent position. There would be no reason to apply the standards set out in *Barich* to determine whether a superintendent could be reassigned to an assistant principal position.

This theory does have the virtue of simplicity. If a position is named in the definition of "teacher" any reassignment would have to be in that same position. However, it would be just as simple to apply the rule that if one holds an administrator's position one can be reassigned to any administrator's position. The Commissioner's solution is more complex than the alternative theory, but is more faithful to the statute at issue. If the Legislature intended that "same professional capacity" means any position listed in the definition of "teacher," the Legislature would have said so. Instead, the Legislature used an undefined phrase that it intended the Commissioner to interpret using his experience in how schools operate. The Commissioner has consistently done so since the first opportunity to interpret the phrase at issue.

Like a Superintendent?

There are no Commissioner's Decisions that directly address whether a superintendent may be reassigned to another position. There is no Commissioner's Decision that finds that a superintendent was improperly reassigned. While *Barich* holds that a superintendent cannot be reassigned to the position of assistant elementary school principal, Barich was not a superintendent and was not reassigned to an assistant principal position. There is a pre TCNA case, *Board of Trustees of Crystal City Independent School District v. Briggs*, 486 S.W.2d 829 (Tex. App. Beaumont 1972, writ ref'd n.r.e), which determined that a reassignment from superintendent to teacher was not allowed:

> Briggs was hired as superintendent of the public schools; under the statute, it is clear that there is a vast difference in the position of superintendent of a district

TASB

answerable only to the Board of Trustees and that of a teacher in the schools. §§ 16.07, 16.08 Education Code.

The court in *Briggs* found the fact that a superintendent was only answerable to the board of trustees highly significant.

In the recent case of *Lehr v. Ector County Independent School District*, Docket No. 003-R3-0908 (Comm'r Educ. 2011), the issue was raised whether it was appropriate to reassign the Executive Director of Special Education to the position of assistant principal. The Commissioner held:

> The change in positions is unlike the move from superintendent to assistant principal described in *Barich*. A superintendent according to statute is "the educational leader and chief executive officer of the school district." TEX. EDUC. CODE § 11.201(a). The position of superintendent is *sui generis*. There is no administrator position that compares to it. The position of Executive Director of Special Education is not mentioned in the Texas Education Code. In fact, the certification mentioned in the job description for the position is "midmanagement/supervisor" is no longer awarded.[8] Currently, the only certifications for administrator are superintendent and principal.[9] There is no certification that an Executive Director of Special Education is required to hold under the Texas Education Code or the rules adopted under the code.

Here like in *Briggs*, the Commissioner noted that the position of superintendent is unique. A superintendent is the chief executive officer of a school district. It goes without saying that a superintendent is answerable to the board of trustees. It is not the fact that the Education Code specifies many of the superintendent's duties and creates unique procedures to nonrenew a superintendent's contract that makes the superintendent's role *sui generis*. TEX. EDUC. CODE §§ 11.201, 21.212. It is instead the fact the superintendent is only answerable to the school board as the chief executive officer of the school district that makes the office of superintendent *sui generis*.

While it is correct that principals have many duties spelled out in the Texas Education Code, this does not make the position of principal *sui generis*. Because the

---

[8] Hence, it is a good thing that the job description allows for alternative qualifications. While those who received midmanagement and supervisor certifications retain them, it is not perhaps wise to limit employment to those who have achieved a certification that is no longer issued.

[9] 19 TEX. ADMIN. CODE ch. 241 and 242. All other administrator certifications were not issued after 2000.

Texas Education Code defines many duties of a principal, the principal position is a well defined species. It does not make the principal position a genus all to itself. A principal is answerable to the superintendent and often to other high administrators such as deputy and assistant superintendents. A principal is answerable to the school board as the school board can nonrenewal or terminate a principal's contract.

Further, while there is a principal certification it is required for both being a principal and an assistant principal. 19 TEX. ADMIN. CODE § 241(d). That the same training is required to be either a principal or an assistant principal is a further indication that the position of principal is not *sui generis*. It is true that one who holds a superintendent's certificate also is qualified to hold the positions of principal and assistant principal. 19 TEX. ADMIN. CODE § 242.1(d). It is not surprising that the training required to be a superintendent would also prepare one to a principal or an assistant principal. But a superintendent is required to have more than a principal's certificate. A superintendent's certificate requires significantly more training than a principal's certificate. When a principal is reassigned, a school district is not limited to assigning the principal to another principal position. *Pasqua v. Fort Stockton Independent School District,* Docket No. 011-R3-1102 (Comm'r Educ. 2004).

Present Reassignment

In the present case, Petitioner was reassigned from the position of high school principal to the position of elementary school assistant principal. The only arguments that Petitioner makes in her briefing is that she could not be assigned to an assistant principal position with a salary reduction. Before the school board, Petitioner had the burden of proof. It was Petitioner's responsibility to show that the reassignment was not in the same professional capacity. Before the Commissioner it is Petitioner's job to show that the board of trustees' decision is not supported by substantial evidence, arbitrary, capricious or unlawful. Petitioner has not chosen to argue that comparing differences in authority, duties, and any other relevant factors that the two positions are not in the same professional

TASB

capacity, with the exception that Petitioner argues that her salary was reduced. Because the issue of the authority and responsibilities was not raised, the size of the two schools and just what Petitioner was doing in those two jobs is unknown. An assistant principal does not have particular statutory duties, but may be assigned a great range of duties. Because the issue was not raised, it is concluded that there was no significant difference in actual authority and responsibilities between the two positions.

Change in Pay

As a principal and for her first year as an assistant principal, Petitioner earned $78,600. According to the salary schedule, for her first year as an assistant principal Petitioner should have earned $68,406.84. The difference between the two salaries is $10,193.16. The question becomes whether this change in pay, along with the change from principal to assistant principal, is sufficient to amount to a change in professional capacity. The change is salary is not insignificant. It no doubt would be felt by Petitioner. However, the change in salary is not such that it indicates a change in professional capacities. Again it should be pointed out that Petitioner had the burden of proof before the school board. There is no evidence in the record of what range of salaries principal receive at Respondent or in other school districts across the state. It would not be surprising to find that some principals in Texas receive less than $68,406.84 per year. But unless such salary evidence is presented, it cannot be determined that the change in salary, along with the change from being a principal to the position of assistant principal, is sufficient to prove a change in professional capacity. No violation of Texas Education Code section 21.206(b) occurred.

Demotion

Petitioner citing *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999) contends that the change in pay and position constitute a demotion. However, there can only be a demotion case that the Commissioner has jurisdiction over if there is a violation of a written employment contract that causes or would cause monetary harm. TEX. EDUC. CODE § 7.057(A)(2)(B). Petitioner makes such

a claim, but also admits that the change in position was permissible under the explicit terms of contract[10]. *See* Petitioner's Brief in Support of Claims for Relief, p. 3. Hence, the demotion would have to be shown to be a violation of statute that was incorporated into the contract for Petitioner to prevail. As shown above, the only statutory claim that the Commissioner has jurisdiction over is resolved against Petitioner. The TCNA does not prohibit Petitioner's transfer. If a transfer, which includes a change in title and a decrease in pay, is allowable under a contract and statutes incorporated into the contract, there is no unlawful demotion. If neither contract nor statute prohibits a change in position and salary, no unlawful demotion has occurred. Petitioner was not demoted.

Conclusion

The Petition for Review should be denied. In many cases, principals may be assigned to other administrative positions. In the present case, it is determined that Petitioner was properly reassigned in the same professional capacity.

## Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1.     The Commissioner has jurisdiction over this case under Texas Education Code section 7.057(a)(2) except for the claims that Respondent violated the Texas Whistleblower Act and the Texas Labor Code.

2.     Under Texas Education Code section 7.057(a)(2) the Commissioner has jurisdiction over violations of the "school laws of this state" and violations of written employment contracts. The "school laws of this state" are defined as the first two titles of the Texas Education Code and the rules adopted under those titles. TEX. EDUC. CODE § 7.057(f)(2).

---

[10] The contract did not state a particular salary for each year of the contract , but stated the salary would be set by the school board.

3. The Texas Whistleblower Act and the Texas Labor Code do not meet the definition of the "school laws of this state." The Commissioner lacks jurisdiction over the Texas Whistleblower Act and the Texas Labor Code under Texas Education Code section 7.057(a)(2)(A).

4. In many cases, statutes existing when contracts are entered into are incorporated into the contracts. However, when a statute is incorporated into a contract, the whole statute including the enforcement mechanism is incorporated. That enforcement mechanism must be exhausted before a case can be brought to the Commissioner. As Petitioner has not exhausted the statutory enforcement mechanisms, the Commissioner lacks jurisdiction under Texas Education Code section 7.057(a)(2)(B) over Petitioner's claims under the Texas Whistleblower Act and the Texas Labor Code.

5. One can be entitled to the protections of Texas Education Code Chapter 21, subchapter E based solely on a contract or district policy. One does not need to hold a position described in the first sentence of Texas Education Code section 21.201(1) to be entitled to a Chapter 21 term contract.

6. The positions described in the first sentence of Texas Education Code section 21.201(1) may or may not be professional capacities for purposes of Texas Education Code section 21.206(b).

7. The fact that the position of "principal" is listed in the first sentence of Texas Education Code section 21.201(1) does not mean that if one is employed by a school district as a principal under a term contract that one is employed under the professional capacity of principal. TEX. EDUC. CODE § 21.206(b).

8. A contract can establish a teacher's professional capacity under Texas Education Code section 21.206(b) if the professional capacity is not impermissibly broad. Whether a professional capacity is impermissibly broad is determined by comparing differences in authority, duties, and salary and other relevant factors. In many cases, a

113-R10-0812                    21

professional capacity of "administrator" will not be impermissibly broad for a reassignment.

9.  Petitioner's professional capacity under Texas Education Code section 21.206(b) is administrator.

10.  As Petitioner did not contest that her contractual professional capacity of administrator is impermissibly broad under the standards set out in *Barich* and its progeny, Petitioner has not raised this issue.

11.  The mere fact that a term contract employee is employed in a principal position does not make the employee's professional capacity "principal,"

12.  In determining whether a transfer is permissible for one employed in the professional capacity of administrator, one must compare responsibilities, authority, salary, and other relevant facts between the two positions.

13.  Respondent did not improperly reassign Petitioner to a non-principal position in violation of Texas Education Code section 21.206(b).

14.  Respondent did not reassign Petitioner in violation of Texas Education Code section 21.206(b).

15.  There can only be a demotion case that the Commissioner has jurisdiction over if there is a violation of a written employment contract that causes or would cause monetary harm. TEX. EDUC. CODE § 7.057(A)(2)(B).

16.  If a transfer, which includes a change in title and a decrease in pay, is allowable under a contract and statutes incorporated into the contract, there is no unlawful demotion. If neither contract nor statute prohibits a change in position and salary, no unlawful demotion has occurred. Petitioner was not demoted.

17.  The Petition for Review should be denied in part and dismissed in part.

113-R10-0812                     22

## Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal be, and is hereby, denied in part and dismissed in part.

SIGNED AND ISSUED this 15th day of August, 2014.

MICHAEL WILLIAMS
COMMISSIONER OF EDUCATION

# Crosby ISD's Appendix

# TAB 6

DOCKET NO. 002-R10-900

| | | |
|---|---|---|
| ELCO RAMOS | § | BEFORE THE |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| EL PASO INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

Petitioner, Elco Ramos, appeals the decision of Respondent, El Paso Independent School District, concerning his grievance. Margaret E. Baker is the Administrative Law Judge appointed by the Commissioner of Education. Ramos is represented by Karl Tiger Hanner of Austin, Texas. EPISD is represented by S. Anthony Safi of El Paso, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be dismissed for lack of jurisdiction and for failure to state a claim for which relief can be granted. No exceptions were filed.

### Findings of Fact

The following Findings of Fact are supported by substantial evidence:

1. EPISD employed Ramos under a term contract during the 1999-2000 school year and assigned him as the principal of the Jefferson/Silva High School.

2. EPISD reassigned Ramos to the position of principal of Houston Elementary School prior to the beginning of the 2000-2001 school year.

3. Ramos has not received any decrease in salary as a result of the reassignment. Ramos's salary for the 2001-2002 school year has not been set.

4. Ramos has not alleged that the two principal positions are radically different.

5. Ramos filed a grievance regarding his reassignment. The board of trustees denied his grievance on July 18, 2000.

6. Ramos timely filed this appeal.

TASB

## Discussion

Ramos asserts that the Commissioner of Education has jurisdiction over this appeal under Texas Education Code section 7.057(a)(2). Ramos contends that EPISD has changed his professional capacity and/or has demoted him and thereby violated section 21.206 of the Texas Education Code and his employment contract. EPISD argues that the Commissioner lacks jurisdiction over this case because Ramos's reassignment did not violate any school law or contract provision and did not cause any monetary harm.

### Monetary Harm

Texas Education Code section 7.057(a)(2)(B) grants jurisdiction over violations of written employment contracts that cause or would cause monetary harm. In the present case, Ramos has been transferred from a position that receives a high school principal's salary to a position that normally receives an elementary school principal's salary. Ramos, however, is to receive the same salary for the current year that he previously received when he was a high school principal. Ramos's salary for the 2001-2002 school year has not yet been determined. Ramos has not suffered any monetary harm. Furthermore, any financial loss in the future is too speculative to invoke the Commissioner's jurisdiction.[1] In fact, Ramos concedes in his brief on the merits that any appeal under section 7.057(a)(2)(B) could not arise until EPISD takes action that will cause him monetary harm. Therefore, the Commissioner lacks jurisdiction over Ramos's claim that his reassignment breached his contract and caused him monetary harm.

### Change of Professional Capacity

Ramos also alleges that EPISD violated a school law of the state. He asserts that EPISD elected to employ him in the same professional capacity when it failed to provide him with notice of a proposed nonrenewal as required by section 21.206 of the Texas Education Code and then violated the statute by changing his professional capacity or demoting him by reassigning him. It is well-established that school districts have broad

---

[1] *Comer v. Dickinson I.S.D.*, Dkt. No. 117-R10-698 (Comm'r Educ. 1999).

#002-R10-900 -2-

TASB

discretion when it comes to transferring administrators.[2] Ramos does not allege that his duties as a high school principal and an elementary school principal differ radically. Ramos's transfer from one principal position to another does not violate the requirement that a teacher who is not nonrenewed must be employed in the same professional capacity. Therefore, it is concluded that Ramos has failed to state a claim for which relief can be granted.

Conclusion

The Commissioner lacks jurisdiction over Ramos's claim that his contract was breached causing him monetary harm because he has not suffered any monetary harm and any financial loss in the future is too speculative to invoke the Commissioner's jurisdiction. Furthermore, Ramos has failed to state a claim for which relief may be granted with respect to his contention that EPISD violated section 21.206 because he has not alleged that the duties of a high school principal and an elementary school principal differ significantly.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1.    The Commissioner lacks jurisdiction to hear Ramos's claim under Texas Education Code section 7.057(a)(2)(B) because Ramos has not suffered any monetary harm and future lost earnings capacity is too speculative to invoke the Commissioner's jurisdiction.

2.    The Commissioner has jurisdiction over Ramos's claim of a violation of Texas Education Code section 21.206; however, Ramos has failed to state a claim for which relief can be granted because he has not alleged that the duties of the two principal positions differ significantly. 19 TEX. ADMIN. CODE § 157.1056.

---

[2] *Young v. Leggett I.S.D.*, Dkt. No. 175-R3-898 (Comm'r Educ. 1999).

PASB

#002-R10-900                    -3-

3.     This case should be dismissed for lack of jurisdiction and for failure to state a claim for which relief can be granted.

ORDER

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DISMISSED for lack of jurisdiction and for failure to state a claim for which relief can be granted.

SIGNED AND ISSUED this _11th_ day of _February_, 2002.

_____
JIM NELSON
COMMISSIONER OF EDUCATION

TASB

# Crosby ISD's Appendix

# TAB 7

| | | |
|---|---|---|
| PAUL PASQUA | § | BEFORE THE |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| FORT STOCKTON INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE DESIGNEE OF THE COMMISSIONER

### Statement of the Case

Petitioner, Paul Pasqua, appeals the action of Respondent, Fort Stockton Independent School District, concerning his grievance. Joan Stewart was initially appointed as the Administrative Law Judge to preside over this cause. Subsequently, Christopher Maska was appointed substitute Administrative Law Judge. Petitioner is represented by Sam D. Sparks, Attorney at Law, San Angelo, Texas. Respondent is represented by Shellie Hoffman Crow, Attorney at Law, Austin, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be denied. No exceptions were filed.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that can best support Respondent's decision:

1. For eleven years, Petitioner, Paul Pasqua, served as a high school principal for Respondent, Fort Stockton Independent School District.

2. On April 8, 2002, Petitioner received a two-year contract. The contract was entitled "Two-Year Term Contract for Certified Administrator Position as Assigned." The contract provides:



2. The board will pay Employee in twelve installments an annual salary according to the compensation plan adopted by the Board, but in no event less than the 2001/2002 annual salary.

. . .

4. Employee shall be subject to assignment and reassignment of positions or duties, additional duties, changes in responsibilities or work, transfers, or reclassification at any time during the contract term.

3. On August 19, 2002, after the completion of the first day of the 2002-2003 school year, Petitioner was called to the Superintendent's office and was assigned to the position of assistant middle school principal.

4. Petitioner filled the position of assistant middle school principal until his resignation on November 6, 2002.

5. Petitioner received full compensation until he resigned.

6. Board members did not conduct a meeting without posting notice to decide whether Petitioner should be reassigned.

7. Petitioner did not file a timely grievance concerning the lack of evaluations.

8. Petitioner failed to raise a constructive discharge argument before the board of trustees.

## Discussion

Petitioner contends that Respondent demoted him by reassigning him from high school principal to assistant middle school principal, constructively terminated his contract, failed to evaluate him, and violated the Open Meetings Act. Respondent denies these allegations, alleges that Petitioner failed to exhaust administrative remedies, and argues that the case is moot.

### Mootness

Respondent contends that this case is moot because Petitioner has resigned from his contract. However, Petitioner alleges that Respondent's actions amount to

constructive discharge. If Petitioner were correct as to the constructive discharge claim, relief could be granted. Based on this allegation, the case is not moot.

Contract

Petitioner contends that his reassignment from high school principal to assistant middle school principal was a demotion which resulted in constructive discharge. Petitioner also contends that his property rights in his contract were violated. The Commissioner's jurisdiction over such claims must be based upon Texas Education Code section 7.057 (a):

> (2) actions or decisions of any school district board of trustees that violate:
>
> . . .
>
> > (B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm.

Petitioner had a property interest in his term contract during the contract's term. The issues are whether the contract was violated and did this result or would it result in monetary harm.

For eleven years, Petitioner served as a high school principal for Respondent. On April 8, 2002, Petitioner received a two-year contract. The contract was entitled "Two-Year Term Contract for Certified Administrator Position as Assigned." The contract provides:

> 2. The board will pay Employee in twelve installments an annual salary according to the compensation plan adopted by the Board, but in no event less than the 2001/2002 annual salary.
>
> . . .
>
> 4. Employee shall be subject to assignment and reassignment of positions or duties, additional duties, changes in responsibilities or work, transfers, or reclassification at any time during the contract term.

On August 19, 2002, after the completion of the first day of the 2002-2003 school year, Petitioner was called to the Superintendent's office and was assigned to the

TASB

position of assistant middle school principal. Petitioner filled this position until November 6, 2002, when he resigned.

Property Right

Petitioner's contract is not a contract for the position of high school principal. It is a contract for a certified administrator position as assigned. Assistant middle school principal is a certified administrator position. 19 TEX. ADMIN. CODE ch. 241. The Commissioner has held that the professional capacity of administrator is to be broadly interpreted for reassignment purposes. *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1993). While Petitioner was not assigned to the assistant principal position until after he had completed his first day of the new school year as a high school principal, the contract itself allows Petitioner to be reassigned as long as compensation is not reduced from that in the 2001-2002 school year. Petitioner did not lose any compensation. Petitioner's reassignment did not violate his contract.

Good Faith

Petitioner contends that the timing of the reassignment was unfair and that he should have been given a chance to remediate if his performance were questioned. Petitioner alleges that if Respondent had notified him at the beginning of the summer that he would be reassigned for the next school year that he could have sought other high school principal positions. During that time frame, districts would still be looking to fill principal positions and Petitioner could still represent that his position with Respondent was high school principal. Petitioner's argument is that Respondent owed Petitioner a duty of good faith and fair dealing. However, in Texas there is no duty of good faith and fair dealing in the employment context. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000). Further, even if a cause of action for good faith and fair dealing existed, the only damages in the present case would be lost earnings capacity or loss of reputation. The Commissioner lacks jurisdiction over an

#011-R3-1102                     -4-                     YASB

employment contract case based on such damages. *Smith v. Nelson*, 53 S.W.3d 792, 795(Tex. App.-Austin 2001, pet. denied).

Constructive Discharge

It has been held that "A constructive discharge occurs when the employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755 (5ᵗʰ Cir. 1986) aff'd in part 109 S.Ct. 2702 (1989). Petitioner has failed to exhaust administrative remedies as to this issue. Petitioner did not make a constructive discharge argument before the board of trustees. This is not surprising because the board hearing occurred on October 28, 2002 and Petitioner did not resign until November 6, 2002. But even assuming that Petitioner had exhausted administrative remedies he would not prevail. The record does not support a finding that Respondent made Petitioner's working conditions intolerable. While Petitioner's anger at being reassigned is understandable, being assigned to position of less prestige does not by itself constitute constructive discharge.

Evaluations

Petitioner notes that he was not formally evaluated during the 1999-2000 and 2000-2001 school years. While this could be related to a violation of Texas Education Code sections 21.354 and 39.054, Petitioner should have brought a grievance as to those events under the district's grievance policy. *Wittman v. Nelson*, 100 S.W.3d 356, 360 (Tex. App.-San Antonio 2002 pet. denied). Respondent limited Petitioner's presentation concerning evaluations to arguments as to how he exhausted local remedies. TR. 4. Even if Petitioner were correct that the failure to provide evaluations violated the school laws of this state, the Commissioner could not as a result order the requested relief of reinstatement and back pay.

Open Meetings Act

Petitioner contends that board members violated the Open Meetings Act by agreeing to the reassignment of Petitioner outside of a properly called meeting. TEX. GOV'T CODE § 551.041. The record is scant as to this issue. Petitioner's representative's allegations taken alone do not constitute a violation of the Open Meetings Act. Tr. 16-17. However, the superintendent's testimony was that he made the decision himself without board approval. Tr. 24. The record does not support a finding that a violation occurred. Even if a violation occurred it would not result in the vote on Petitioner's grievance being overturned. A discussion that was not properly conducted according to the Open Meetings Act does not result in voiding a vote at a properly called meeting on the same subject. *Hill v. Palestine Indep. Sch. Dist.*, 113 S.W.3d 14, 17 (Tex. App.-Tyler 2000, pet denied).

Conclusion

Respondent did not violate Petitioner's contract by reassigning Petitioner. Petitioner's contract allowed for the reassignment. Petitioner failed to exhaust administrative remedies as to his constructive termination and evaluation claims. Respondent did not violate the Open Meetings Act. Petitioner's appeal should be denied.

## Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Designee of the Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner has jurisdiction to hear this cause under Texas Education Code section 7.057 except as specified in Conclusions of Law Nos. 2, 6-8.

2. Because Petitioner failed to exhaust administrative remedies as to his constructive discharge and evaluation claims, the Commissioner lacks jurisdiction over these claims. 19 TEX. ADMIN. CODE §157.1056(a).

3. As pled, this case is not moot.

4. Assistant middle school principal is a certified administrator position. 19 TEX. ADMIN. CODE ch. 241.

5. Petitioner's reassignment did not violate his contract.

6. There is not a duty of good faith and fair dealing in the employment law context.

7. The Commissioner lacks jurisdiction over Petitioner's good faith and fair dealing claim. 19 TEX. ADMIN. CODE §157.1056(a).

8. Even if there were a duty of good faith and fair dealing in the employment context, jurisdiction would not exist under Texas Education Code section 7.057(a)(2)(B) because the Commissioner lacks jurisdiction on a claim of lost earnings capacity or loss of reputation. 19 TEX. ADMIN. CODE §157.1056(a).

9. Members of Respondent's board of trustees did not violate the Open Meetings Act as they did not preapprove Petitioner's reassignment outside of a properly called meeting. TEX. GOV'T CODE § 551.041

10. Even if members of Respondent's board of trustees had violated the Open Meetings Act by preapproving Petitioner's reassignment outside of a properly called meeting, this does not result in the board's vote to deny Petitioner's grievance being declared void.

11. Petitioner's appeal should be denied.

## ORDER

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Designee of the Commissioner of Education, it is hereby

TASB

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ISSUED this 15th day of June, 2004.

_Robert Scott_
ROBERT SCOTT
CHIEF DEPUTY COMMISSIONER
BY DESIGNATION

FASB

# Crosby ISD's Appendix

# TAB 8

| | | |
|---|---|---|
| JANIS K. UNDERWOOD | § | BEFORE THE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| WEST RUSK COUNTY | § | |
| CONSOLIDATED INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Janis K. Underwood, appeals the denial of her grievance concerning her reassignment from junior high school principal to either principal of the seventh through ninth grades or to assistant high school principal by Respondent, West Rusk County Consolidated Independent School District, subsequent to the merger of the junior and senior high school campuses.

The Administrative Law Judge appointed by the Commissioner of Education is Paula Hamje. Petitioner is represented by Kevin F. Lungwitz, Attorney at Law, Austin, Texas. Respondent is represented by John C. Hardy, Attorney at Law, Tyler, Texas.

On February 17, 1998, the Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be denied. Exceptions and replies were timely filed and considered.

### Findings

It is determined that the following findings are supported by substantial evidence:

1.    Petitioner, Janis K. Underwood, was employed by Respondent, West Rusk County Consolidated Independent School District, as West Rusk Junior High principal for six years prior to filing her appeal to the Commissioner.

TASB

2.     A proposed merger of the West Rusk Junior High and High School resulted in Respondent's notice, on or about September 30, 1997, to Petitioner of a reassignment from her position as junior high principal under the immediate supervision of Superintendent of schools to "seventh through ninth grade principal" or to assistant high school principal under the immediate supervision of the high school principal.

3.     On February 18, 1997, Petitioner and Respondent entered into a written contract pertaining to Petitioner's employment with Respondent in the position of "administrator" for the term of July 1, 1997 to June 30, 1999.  At the time of the appeal, the contract remained in effect.  The contract provides that Petitioner is subject to reassignment of positions or duties, additional duties, changes in responsibilities or work, transfers, or reclassification at any time during the term of the contract.

4.     The reassigned position includes responsibility for more students and teachers, but with similar duties as Petitioner's previous position.  As a result of the reassignment, Petitioner's salary remains the same, her professional responsibilities are not lessened, and the degree of skill required is not lessened.

5.     Petitioner remains an administrator after the reassignment and continues to function in that same professional capacity at the merged junior and senior high schools.

## Discussion

Petitioner seeks reinstatement as head principal of West Rusk Junior High School, reporting directly to the superintendent of schools, and seeks an award of compensation for actual or potential economic and other losses.  Relief is sought due to her reassignment to either "seventh through ninth grade principal" or to assistant high school principal at the newly merged junior and senior high school in West Rusk CISD. Petitioner argues that the reassignment is a demotion and breach of her employment contract.  In addition, she argues that the reassignment will have a negative impact on

her future earning potential; however, no evidence was offered in support of that argument.

Petitioner has a written contract with Respondent for employment as an administrator which is not intended to mean she always retains the "exact same position" she occupied prior to the reassignment. *Barich v. San Felipe-Del Rio Consolidated Independent School District*, Docket No.117-R1a-484 (Comm'r Educ.1985). The reassigned position is very similar to the previous position with regard to duties and responsibilities. Petitioner is expected to function as principal to seventh, eighth and ninth grade students instead of seventh and eighth grades only. Petitioner's salary does not change. Petitioner's written contract provides in paragraph "2" that Petitioner is subject to "...reassignment of positions or duties, additional duties, changes in responsibilities or work ...at any time during the contract term." Respondent has acted within the parameters of Petitioner's contract while attempting to accomplish the merger of two school campuses. There is no evidence that Respondent intended to demote Petitioner, and Petitioner suffered no reduction in pay, responsibilities, or required skills, all important elements to consider in determining whether a reassignment constitutes a demotion. *Reyes v. Culberson County Independent School District*, Docket No. 229-R3-787 (Comm'r Educ. 1989) and *Cody v. Graham Independent School District*, Docket No. 247-R3-787 (Comm'r. Educ. 1989). Petitioner remains an administrator at the same pay.

Respondent considered the needs of the district in the decision to reassign Petitioner. There was no evidence presented that Respondent failed to consider criteria for personnel decisions set out in its local board policies as asserted by Petitioner; therefore, there is no need to address the issue of whether local board policy is a school law as defined by statute. Petitioner argues that Respondent violated the Texas Education Code §21.206 which requires a school district to employ an employee in the

TASB

same professional capacity from one year to the next. Pertinent portions of the rule read as follows:

> (a) Not later than the 45th day before the last day of instruction a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract.
>
> (b) The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

This case does not concern renewal or nonrenewal of a contract; therefore the above provision does not appear applicable. In addition, Petitioner is retained in her same professional capacity as previously addressed in this proposal.

## Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner of Education has jurisdiction over the instant matter pursuant to Tex. Educ. Code §7.057.

2. Respondent's reassignment of Petitioner to an administrator position in the newly merged junior and senior high school was not a violation of the school laws of this state.

3. Respondent's reassignment of Petitioner was not a demotion and was not in violation of any provision of her written employment contract with Respondent that caused or would cause monetary harm to Petitioner.

4. Petitioner's appeal should be DENIED.

**TASB**

#062-R3-198

## O R D E R

After due consideration of the record, matters officially noticed, and the foregoing Findings and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ISSUED this _7th_ day of _May_____,
1998.

_____
MIKE MOSES
COMMISSIONER OF EDUCATION

TASB

# Crosby ISD's Appendix

# TAB 9

| | | |
|---|---|---|
| HOLLY McCOY | § | BEFORE THE |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| KERMIT INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Holly McCoy, appeals the action of Respondent, Kermit Independent School District, concerning her grievance. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education. Petitioner is represented by Mark W. Robinett, Attorney at Law, Austin, Texas. Respondent is represented by Christine Badillo, Attorney at Law, Austin, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be dismissed in part and denied in part.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1. Petitioner was employed by Respondent under a term contract for the 2007-2008 school year in the position of principal. This contract expired at the end of the 2007-2008 school year.

2. For the 2008-2009 school years, Petitioner signed a term contract with Respondent. The contract is entitled "For Certified Administrator."

---

[1] See 19 TEX. ADMIN. CODE § 157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

TASB

3. For the 2008-2009 school year, Respondent assigned Petitioner to the position of assistant principal. Petitioner's salary or benefits for the 2008-2009 school year were not decreased from that received for the 2007-2008 school year.

## Discussion

Petitioner contends that Respondent changed her professional capacity when it reassigned her from the position of principal to the position of assistant principal. In particular, Petitioner maintains that the position of a campus principal is a distinct professional capacity. Petitioner also contends that she was demoted. Respondent denies Petitioner's claims.

## Demotion

The Texas Education Code does not prohibit a school district from demoting a teacher. Petitioner has not alleged that any section of the Texas Education Code prohibits demotions. To the extent the Commissioner has jurisdiction over demotions, that authority must come from Texas Education Code section 7.057(a)(2)(B) which gives the Commissioner jurisdiction over violations of written employment contracts that cause or would cause monetary harm. Because Petitioner has not lost salary or benefits Petitioner cannot show the requisite monetary harm. *Smith v. Nelson*, 53 S.W.3d 792 (Tex. App.-Austin 2001, pet denied). The Commissioner lacks jurisdiction over Petitioner's demotion claim.

## Same Professional Capacity

A "teacher[2]" who holds a term contract under Texas Education Code chapter 21, subchapter E that is about to expire cannot be reassigned to new a position for the next school year unless the position is within the same professional capacity as the position the "teacher" held in the current school year:

---

[2] The definition of "teacher" found at Texas Education Code section 21.201 is truly a creature of statute. It includes individuals who would never in common speech be referred to as teachers.

TASB

(a) Not later than the 45th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract.

(b) the board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

TEX. EDUC. CODE § 21.206. The term "same professional capacity" is not defined in the Texas Education Code. However, the Commissioner from the earliest substantive decision concerning this provision has held that "administrator" is a professional capacity.

> It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1[3] may not be placed in the capacity of a classroom teacher. . .
>
> In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such an assignment include, but are not limited to differences in authority, duties, and salary.

*Burich v. San Felipe-Del Rio Consolidated Independent School District.* Docket No. 117-R1a-484 (Comm'r Educ. 1985). Further, the Commissioner has found that the professional capacity of "administrator" is to be broadly interpreted:

> It is possible to imagine situations where the transfer clause of an employment contract would be held to be unenforceable under § 21.204(b)[4]. However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable

---

[3] In the original Term Contract Nonrenewal Act, a district had to propose nonrenewal on or before April 1, instead of the current requirement of "the 45th day before the last day of instruction." Term Contract Nonrenewal Act, 67th Leg.. R.S., ch. 765, § 2, 1981 Tex. Gen Laws 2847.

[4] The old Texas Education Code section 21.204 is the predecessor of the current Texas Education Code section 21.206.

TASB

personnel management problems it might cause if imposed inflexibly. Districts have responded to this law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me consistent with the policies of the TCNA.

*Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1993). In many cases, it will not constitute a violation of Texas Education Code section 21.206, for a district to reassign a term contract administrator from a position with one administrative job title to a position that has a different administrative job title.

Principal and Assistant Principal Certification

Texas Education Code section 21.046 provides guidance for the State Board for Educator Certification in creating standards for principal certification. The State Board for Educator Certification issues only one type of certificate for both principals and assistant principals:

Principal Certificate.
(a) Due to the critical role the principal plays in campus effectiveness and student achievement, and consistent with the Texas Education Code (TEC) §21.046(c), the rules adopted by the State Board for Educator Certification will ensure that each candidate for the Principal Certificate is of the highest caliber and possesses the knowledge and skills necessary for success.
(b) As required by TEC §21.046(b)(1)-(6), the standards identified in §241.15 of this title (relating to Standards for the Principal Certificate) emphasize instructional leadership; administration, supervision, and communication skills; curriculum and instruction management; performance evaluation; organization; and fiscal management.
(c) Each individual serving as a principal or assistant principal is expected to actively participate in professional development activities to continually update his or her knowledge and skills. Currency in best practices and research as related to both campus leadership and student learning is essential.
(d) The holder of the Principal Certificate issued under the provisions of this chapter may serve as a principal or assistant principal in a Texas public elementary, middle, or secondary school.

TASB

19 TEX. ADMIN. CODE § 241.1. Both principals and assistant principals are treated by the State Board for Educator Certification as principals:

Requirements for the First-Time Principal in Texas

      (a) Principals or assistant principals employed for the first time as campus administrators (including the first time in the state) shall participate in, at least, a one-year induction period.

      (b) The induction period should incorporate the assessment and professional growth requirements contained in §241.30 (b) of this title (relating to Requirements to Renew the Standard Principal Certificate).

      (c) The induction period should be a structured, systemic process for assisting the new principal or assistant principal in further developing skill in guiding the everyday operation of a school, adjusting to the particular culture of a school district, and developing a personal awareness of self in the campus administrator role. Mentoring support must be an integral component of the induction period.

19 TEX. ADMIN. CODE § 241.20. The fact that principals and assistant principals are both required to have the same certificate and to undergo the same one-year induction period is significant evidence that principals and assistant principals normally share the same professional capacity.

Principal's Role

Petitioner is correct that an assistant principal reports to a principal. Petitioner is also correct that the Texas Education Code gives specific and important roles to principals but not to assistant principals. Texas Education Code 11.202 makes clear that "the principal of a school is the instructional leader of the school" and goes on to specify duties of a principal. A principal has specific duties under Texas Education Code chapter 37 concerning the placement of students. There are real differences between principals and assistant principals. However, principals and assistant principals are both administrators. Principals and assistant principals share the same certification. The mere fact that a term contract "teacher" is reassigned from the position of principal to the position of assistant principal does not mean that a "teacher" is being employed in a different professional capacity.

TASB

In certain cases, it may be the case that a "teacher" would be employed in a different professional capacity when a "teacher" is reassigned from being a principal to a position of assistant principal. A district could give an employee the title of "assistant principal" but give that individual none of the duties normally associated with the job of assistant principal. In such a case, the factors set forth in *Barich* and perhaps additional factors might result in a conclusion that a change of professional capacity has occurred. However, in the present case Petitioner's argument is that the change from principal to assistant principal alone is sufficient to show a violation of Texas Education Code section 21.206(b). It is not.

Conclusion

A change from a position of principal to a position of assistant principal does not necessarily involve a change of professional capacity as that term is in Texas Education Code section 21.206(b).

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1.      The Commissioner has jurisdiction to over Petitioner's Texas Education Code section 21.206 claim under Texas Education Code section 7.057(a)(2)(A).

2.      The Commissioner lacks jurisdiction over Petitioner's demotion claim. TEX. EDUC. CODE § 7.057(a)(2)(B).

3.      The Commissioner does not have jurisdiction over demotion claims based on Texas Education Code section 7.057(a)(2)(A).

4.      The Commissioner may have jurisdiction over a demotion claim if a violation of a written employment contract is alleged that causes or would cause monetary harm. TEX. EDUC. CODE § 7.057(a)(2)(B).

TASB

5. The monetary harm referred to in Texas Education Code section 7.057(a)(2)(B) must be a contract damage. If an employee does not lose salary or benefits based on an alleged violation of a written contract, the employee has not suffered monetary harm.

6. Because Petitioner did not suffer monetary harm as that term is used in Texas Education Code section 7.057(a)(2)(B), the Commissioner lacks jurisdiction over Petitioner's demotion claim.

7. Administrator is a professional capacity as that term is used in Texas Education Code section 21.206(b).

8. The professional capacity of administrator, as it applies to Texas Education Code section 21.206(b), is a broad professional capacity.

9. The positions of principal and assistant principal are normally within the same professional capacity. TEX. EDUC. CODE § 21.046, 19 TEX. ADMIN. CODE § 241.1, and 19 TEX. ADMIN. CODE § 241.20.

10. The fact alone that a principal is reassigned to the position of assistant principal is not sufficient to show a change of professional capacity as that term is used in Texas Education Code section 21.206(b).

11. Respondent did not violate Texas Education Code section 21.206(b) when Petitioner was reassigned from the position of principal to the position of assistant principal.

12. The Petition for Review should be dismissed in part and denied in part.

TASB

<u>Order</u>

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner appeal be and is hereby dismissed in part and denied in part.

SIGNED AND ISSUED this 13th day of April , 2012.

_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

TASB

# Crosby ISD's Appendix

# TAB 10

A BILL TO BE ENTITLED

AN ACT

relating to school employee rights.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subchapter C, Chapter 13, Education Code, is amended by amending Sections 13.103, 13.107, 13.108, 13.111, 13.112, 13.113, 13.114, 13.115, 13.116, 13.117 and 13.118 to read as follows:

SUBCHAPTER C. TEACHERS' EMPLOYMENT CONTRACTS

(a) Section 13.103. PROBATIONARY CONTRACT: TERMINATION. The board of trustees of any school district may terminate the employment of any teacher holding a probationary contract at the end of the contract period, if in their judgment the best interests of the school district will be served thereby; provided, that notice of intention to terminate the employment shall be given by the board of trustees to the teacher on or before April 1, preceding the end of the employment term fixed in the contract. In event of failure to give such notice of intention to terminate within the time above specified, the board of trustees shall thereby elect to employ such probationary teacher in the same professional capacity, and under probationary contract status for the succeeding school year if the teacher has been employed by such district for less than three successive school years, or in a continuing contract position if such teacher has been employed during three consecutive school years.

(b) Section 13.107. STATUS UNDER CONTINUING CONTRACT. Each teacher with whom a continuing contract has been made as herein provided shall be entitled to continue in his [position or a position with the school district,] same professional capacity, at a salary authorized by the board of trustees of said district complying with the minimum salary provisions of the foundation aid law, for future school years without the necessity for annual nomination or reappointment, until such time as the person:

(1) resigns, or retires under the teacher retirement system;

(2) is released from employment by the school district at the end of a school year because of necessary reduction of personnel as herein defined;

(3) is discharged for lawful cause, as defined in Section 13.109 of this code and in accordance with the procedures hereinafter provided;

(4) is dismissed at the end of a school year for any reason as set out in Section 13.110 of this code and pursuant to the procedures hereinafter provided in such case; [or]

(5) is returned to probationary status, as authorized in Section 13.110 of this code[.]; or

(6) is changed to a different professional capacity in accordance with Section 13.111 of this code.

(c) Section 13.108. ADMINISTRATIVE PERSONNEL. The board of trustees may grant to a person who has served as superintendent, principal, supervisor, or other person employed in any administrative position for which certification is required, at the completion of his service in such professional capacity, a continuing contract to serve as a teacher, and the period of service in such other professional capacity shall be construed as contract service as a teacher within the meaning of this subchapter.

(d) Section 13.111. CHANGE OF PROFESSIONAL CAPACITY. The professional capacity of a teacher, whether employed under a probationary contract or a continuing contract, may not be changed during a school year nor at the end of a school year, except for just cause.

(e) [Section 13.111.] Section 13.112. NOTICE. (a) Before any teacher shall be discharged during the year for any of the causes mentioned in Section 13.109 of this code, or before any probationary contract teacher shall be dismissed at the end of a school year before the end of the term fixed in his contract, or before any teacher holding a continuing contract shall be dismissed or returned to probationary contract status at the end of a school year for any of the reasons mentioned in Section 13.110 of this code, or before the professional capacity of any teacher shall be changed, he shall be notified in writing by the board of trustees or under its direction of the proposed action and of the grounds assigned therefor.

(b) In the event the grounds for the proposed action relate to the inability or failure of the teacher to perform his assigned duties, the action shall be based upon the written recommendation by the superintendent of schools, filed with the board of trustees. Any teacher so discharged or dismissed or returned to probationary contract status or whose professional capacity is changed shall be entitled, as a matter of right, to a copy of each and every evaluation report, or any other memorandum in writing which has been made touching or concerning the fitness or conduct of such teacher, by requesting in writing a copy of the same.

(f) [Section 13.112.] Section 13.113. HEARING. (a) If, upon written notification of the proposed action, the teacher desires to contest the same, he shall notify the board of trustees in writing within 10 days after the date of receipt by him of the official notice above prescribed, of his desire to be heard[, and he shall be given a public hearing if he wishes or if the board of trustees determines that a public hearing is necessary in the public interest].

(b) Upon any charges based upon grounds of inability or failure of the teacher to perform his assigned duties, the board of trustees may in its discretion establish a committee of classroom teachers and administrators, and the teacher may request a hearing before this committee prior to hearing of the matter by the [board of trustees] independent hearing officer.

(c) [Within 10 days after request for hearing made by the teacher, the board of trustees shall fix a time and place of hearing, which] The hearing shall be held not less than forty-five days nor more than sixty days after the board receives written notice from the teacher requesting a hearing, unless the teacher and the administration agree otherwise. The hearing shall be held before the proposed action shall be effective. Such hearing shall be public unless the teacher requests in writing that it be private.

(d) The hearing shall be conducted by an independent hearing officer. The independent hearing officer shall be chosen from a list of five individuals certified by the commissioner of education. The State Board of Education shall establish by rule the criteria for certification. The individuals certified by the commissioner of education shall not be current or former agents, representatives, or employees of any school district, school employee organization, or school

board organization. Both the administration and the teacher shall have one opportunity each to reject the entire list, and to receive another list of five individuals certified by the commissioner. Both the administration and the teacher shall alternately strike two individuals each from the list of five, beginning with the administration. The individual remaining on the list shall serve as the independent hearing officer.

(e) The Texas Rules of Civil Procedure and the Texas Rules of Civil Evidence shall apply to the hearing and prehearing process. The independent hearing officer shall have the power to issue subpoenas for the attendance of witnesses and the production of documents at depositions and the hearing, effective within the State of Texas, and to swear witnesses. The hearing and any depositions shall be held within the geographical boundaries of the school district. The hearing shall be reported by a certified court reporter.

[(d)] (f) At such hearing, the teacher may employ counsel, if desired, and shall have the right to hear the evidence upon which the charges are based, to cross-examine all adverse witnesses, and to present evidence in opposition thereto, or in extenuation.

(g) At the hearing, the administration shall have the burden of proof by a preponderance of the evidence. The independent hearing officer shall make a written recommendation which shall include findings of fact and conclusions of law. The independent hearing officer's recommendation shall be issued within twenty days of the close of the hearing.

[(e)] (h) The board shall take such action as it deems lawful and appropriate and shall notify the teacher in writing of that action within 15 days following the [conclusion of the hearing.] issuance of the independent hearing officer's recommendation. The board shall make its decision based on a review of the record and the recommendation developed by the independent hearing officer, and on oral argument before the board by the teacher or the teacher's representative and the administration's representative. The board shall either accept or reject the independent hearing officer's recommendation. The board may reject the recommendation only if it is arbitrary, capricious, unlawful or not supported by substantial evidence.

(g) [Sec. 13.113.] Sec. 13.114. SUSPENSION WITHOUT PAY. If the proposed action be discharge of the teacher for any of the reasons set forth in Section 13.109 of this code, the teacher may be suspended without pay by order of the board of trustees, or by the superintendent of schools if such power has been delegated to him by express regulation previously adopted by the board of trustees, but in such event the hearing shall not be delayed for more than 15 days after request for hearing, unless by written consent of the teacher.

(h) [Section 13.114.] Section 13.115. DECISION OF BOARD. If the teacher upon notification of any such proposed action fails to request a hearing within 10 days thereafter, or after a hearing as hereinabove provided, the board of trustees shall take such action and shall enter such order as it deems lawful and appropriate. If the teacher is reinstated, he shall immediately be paid any compensation withheld during any period of suspension without pay. No order adverse to the teacher shall be entered except upon majority vote of the full membership of the board of trustees.

(i) [Section 13.115.] Section 13.116. APPEALS. (a) If the board of trustees shall order the teacher discharged during the school year under Section 13.109 of this code, the teacher shall have the right to appeal such action to the commissioner of education[, for review by him, provided notice of such appeal is filed with the board of trustees and a copy thereof mailed to the commissioner within 15 days after written notice of the action taken by the board of trustees shall be given to the teacher]; or, the teacher may challenge the legality of such action by suit brought in the district court of any county in which such school district lies within 30 days after such notice of the action taken by the board of trustees has been given to the teacher.

(b) If the board of trustees shall order the continuing contract status of any teacher holding such a contract abrogated at the end of any school year and such teacher returned to probationary contract status, or if the board of trustees shall order that any teacher holding a continuing contract be dismissed at the end of the school year, or that any teacher holding a probationary contract shall be dismissed at the end of a school year before the end of the employment period covered by such probationary contract, or that the professional capacity of

any teacher be changed, the teacher affected by such order[, after filing notice of appeal with the board of trustees,] may appeal to the commissioner of education [by mailing a copy of the notice of appeal to the commissioner within 15 days after written notice of the action taken by the board of trustees has been given to the teacher].

(c) If the teacher appeals the board's action to the commissioner of education, the commissioner shall not hold a hearing, but shall make his decision based on a review of the record and the recommendation developed by the independent hearing officer. The commissioner may affirm a board's decision which rejected the independent hearing officer's recommendation only if the recommendation was arbitrary, capricious, unlawful, or not supported by substantial evidence. The commissioner may affirm a board's decision which accepted the independent hearing officer's recommendation only if the recommendation was not arbitrary, capricious, unlawful, or unsupported by substantial evidence.

(d) If the commissioner reverses the decision of the board, he shall order that the teacher shall be reinstated in his/her same professional capacity until the teacher is lawfully discharged or until the teacher's professional capacity is lawfully changed, or he shall order that the district pay the teacher one year of front pay in lieu of reinstatement. In addition, the commissioner shall order the district to pay the teacher back pay for the period of time between the effective date of the board's action and the date of reinstatement.

[(e)] (e) Either party to an appeal to the commissioner shall have the right to appeal from his decision to a District Court in Travis County.

[(d) Deleted by Acts 1984, 68th Leg., 2nd C.S., ch. 28, art. I, part D, Sec. 5, eff. Sept. 1, 1984.]

(j) [Section 13.116.] Section 13.117. RESIGNATIONS. (a) Any teacher holding a continuing contract with any school district, or holding a probationary contract with an unexpired term continuing through the ensuing school year, may relinquish the position and leave the employment of the district at the end of any school year without penalty by written resignation addressed to and filed with the board of trustees prior to August 1, preceding the end of the

school year that the resignation is to be effective. A written resignation mailed by prepaid certified or registered mail to the superintendent of schools of the district at the post office address of the district shall be considered filed at time of mailing.

(b) Any teacher holding a continuing contract or such unfulfilled probationary contract may resign, with the consent of the board of trustees of the employing school district, at any other time mutually agreeable.

[(c) A teacher holding a probationary contract or a continuing contract obligating the employing district to employ such person for the ensuing school year, who fails to resign within the time and in the manner allowed under Subsections (a) and (b) of this section, and who fails to perform such contract, shall be ineligible for employment by any other Texas school district during the ensuing school year covered by such contract, and his teaching certificate shall be suspended for that school year only.]

(k) [Section 13.117.] Section 11.274. SUPPLEMENTAL CONTRACTS FOR MATH AND SCIENCE TEACHERS. (a) The legislature finds that the health of the economy of the state and the United States is increasingly dependent on public education to produce students possessing general and specific skills in mathematics and science.

(b) It is the purpose of this subchapter to encourage local school districts to provide more and better quality science and mathematics instruction through the use of supplemental contracts for science and mathematics teachers to expand the opportunity for students to have more time on task by instituting summer programs and after-school studies and developing a system of competition for science and math students. Such expanded opportunities shall be for remedial, regular, and talented and gifted instruction. Therefore, local school districts are authorized and encouraged to establish such programs to increase both the numbers of students dedicated to the study of math and science and the quality of instructional time in both areas.

(c) The commissioner of education is authorized and directed to select school districts of various types to conduct pilot program studies to determine the most effective models for

implementation of the program. Such pilot program studies shall be conducted during the 1984-85 biennium.

(d) The commissioner of education, upon completion of successful pilot program studies shall publish and disseminate to all school districts model programs to achieve the goals of this subchapter.

(e) The commissioner of education shall report the results of the pilot studies to the 69th Legislature and may make recommendations for the inclusion of such programs in the Foundation School Program.

(f) Local school districts may volunteer for the pilot studies and, if selected by the commissioner to participate, are authorized and encouraged to provide an amount of up to $5,000 as supplemental pay for each math and science teacher selected to participate in the pilot programs. Such funds shall be included in the participating teacher's regular payroll.

(g) The commissioner of education, if funds are available either through the Foundation School Program or through various regional services center grants or funds, may forward funds to the local participating districts in the pilot programs to assist in local funding of these programs. In addition, local school districts are encouraged to seek private funding, including foundation support to pursue the goals of this subchapter.

(l) Section 13.118. DEFINITIONS. As used in this subchapter, the following terms shall have the meaning ascribed to them in this section:

(a) "Teacher" means a classroom teacher, counselor, librarian, nurse, diagnostician, visiting teacher, or other full-time professional employee, except administrative or paraprofessional personnel.

(b) "Board" and "board of trustees" means the governing board of a public school district.

(c) "School district" means any public school district in this state.

(d) "Same professional capacity" means a position, including supervision of extracurricular activities, which is substantially equal in duties, responsibility, authority, certification, endorsement, education, and remuneration.

(e) "Independent hearing officer" means an individual who shall conduct the hearing.

SECTION 2. Chapter 13, Education Code, is amended by adding Subchapter H, to read as follows:

SUBCHAPTER H. EDUCATIONAL SUPPORT PERSONNEL

Section 13.601. DEFINITIONS. As used in this subchapter, the following terms shall have the meaning ascribed to them in this section:

(a) "Educational support personnel" means a bus driver, custodian, food service employee, maintenance employee, security personnel, educational aide, educational secretary, and all other non-professional, para-professional and professional personnel who do not fall within the definition of "teacher" in Section 21.201(1) of this code.

(b) "Board" and "board of trustees" means the governing board of a public school district.

(c) "School district" means any public school district in this state.

(d) "Same capacity" means a position which is substantially equal in duties, responsibility, authority, certification, endorsement, education, and remuneration.

(e) "Independent hearing officer" means an individual who shall conduct the hearing.

Section 13.602. EVALUATIONS. The board of trustees of each school district shall provide by written policy for the periodic written evaluation of each educational support personnel in its employ at annual or more frequent intervals. Such evaluation shall be considered by the independent hearing officer and the board of trustees prior to any decision by the board to terminate the employment of any educational support personnel or to change the capacity of any educational support personnel.

Section 13.603. TERMINATION OF EMPLOYMENT; CHANGE OF CAPACITY. (a) A board of trustees may not terminate the employment of any educational support personnel, nor change the capacity of any educational support personnel, except for just cause.

(b) The board of trustees of each school district shall establish policies and procedures for receiving recommendations from its school administration for the termination of employment of educational support personnel, and for the change of capacity of educational support personnel.

Section 13.604. NOTICE. (a) In the event the board of trustees receives a recommendation from its administration for the termination of an educational support personnel's employment, or for a change in an educational support personnel's capacity, the board, after consideration of the written evaluations required by Section 13.602 of this subchapter and the reasons for the recommendation, shall, in its sole discretion, either reject the recommendation or shall give the educational support personnel written notice of the proposed action.

(b) The notice of proposed action required in this section shall contain a statement of all the reasons for such proposed action.

Section 13.605. HEARING. (a) If the educational support personnel desires a hearing after receiving notice of the proposed action, the educational support personnel shall notify the board of trustees in writing within 10 days after receiving the notice. The hearing shall be held not less than forty-five days nor more than sixty days after the board receives written notice from the educational support personnel requesting a hearing, unless the educational support personnel and the administration agree otherwise. Such hearing shall be closed unless an open hearing is requested by the educational support personnel.

(b) The hearing shall be conducted by an independent hearing officer. The independent hearing officer shall be chosen from a list of five individuals certified by the commissioner of education. The State Board of education shall establish by rule the criteria for certification. The individuals certified by the commissioner of education shall not be current or former agents, representatives, or employees of any school district, school employee organization, or school

board organization. Both the administration and the educational support personnel shall have one opportunity each to reject the entire list, and to receive another list of five individuals certified by the commissioner. Both the administration and the educational support personnel shall alternately strike two individuals each from the list of five, beginning with the administration. The individual remaining on the list shall serve as the independent hearing officer.

(c) The Texas Rules of Civil Procedure and the Texas Rules of Civil Evidence shall apply to the hearing and prehearing process. The independent hearing officer shall have the power to issue subpoenas for the attendance of witnesses and the production of documents at depositions and the hearing, effective within the State of Texas, and to swear witnesses. The hearing and any depositions shall be held within the geographical boundaries of the school district. The hearing shall be reported by a certified court reporter.

(d) At the hearing, the administration shall have burden of proof by a preponderance of the evidence. The independent hearing officer shall make a written recommendation which shall include findings of fact and conclusions of law. The independent hearing officer's recommendation shall be issued within twenty days of the close of the hearing.

Section 13.606. DECISION OF BOARD. (a) If the educational support personnel fails to request a hearing, the board shall take such action as it deems lawful and appropriate and shall notify the educational support personnel in writing of that action within 15 days of the expiration of the 10-day period for requesting a hearing.

(b) If the educational support personnel requests a hearing, the board shall take such action as it deems lawful and appropriate and shall notify the educational support personnel in writing of that action within 15 days following the issuance of the independent hearing officer's recommendation. The board shall make its decision based on a review of the record and the recommendation developed by the independent hearing officer, and on oral argument before the board by the educational support personnel or his/her representative and the administration's representative. The board shall either accept or reject the independent hearing officer's

recommendation. The board may reject the recommendation only if it is arbitrary, capricious, unlawful or not supported by substantial evidence.

Section 13.607. APPEAL. (a) If the educational support personnel is aggrieved by the decision of the board of trustees, he may appeal to the State Commissioner of Education pursuant to Section 11.13 of this code. The commissioner shall not hold a hearing, but shall make his decision based on a review of the record and the recommendation developed by the independent hearing officer. The commissioner may affirm a board's decision which rejected the independent hearing officer's recommendation only if the recommendation was arbitrary, capricious, unlawful, or not supported by substantial evidence. The commissioner may affirm a board's decision which accepted the independent hearing officer's recommendation only if the recommendation was not arbitrary, capricious, unlawful, or unsupported by substantial evidence.

(b) If the commissioner reverses the decision of the board, he shall order that the educational support personnel shall be reinstated in his/her same capacity until the educational support personnel's employment is lawfully terminated or until the educational support personnel's capacity is lawfully changed, or he shall order that the district pay the educational support personnel one year of front pay in lieu of reinstatement. In addition, the commissioner shall order the district to pay the educational support personnel back pay for the period of time between the effective date of the termination of employment or change in capacity and the date of reinstatement.

(c) Either party may appeal the commissioner's decision to a district court in Travis County.

Section 13.608. PROBATION. (a) The board of trustees of any school district may provide by written policy for a probationary period not to exceed the first year of continuous employment in the district.

(b) The provisions of this subchapter shall not apply to the termination of an educational support personnel's employment during or at the end of such probationary period. The

provisions of this subchapter shall apply to a change in the capacity of an educational support personnel during or at the end of such probationary period.

SECTION 3. Chapter 13, Education Code, is amended by adding Subchapter I, to read as follows:

SUBCHAPTER I. EMPLOYEE GRIEVANCE PROCEDURES

Section 13.701. GRIEVANCE PROCEDURES FOR LOCAL SCHOOL DISTRICTS. Each public school district in Texas shall adopt a written board policy establishing a grievance procedure for employees to present grievances concerning their wages, hours of work, or conditions of work. The purpose of this grievance procedure is to secure prompt and equitable resolution of employee grievances at the lowest possible level.

Section 13.702. DISTRIBUTION OF GRIEVANCE PROCEDURE. (a) The school district shall distribute a copy of the grievance procedure to every employee at the beginning of every school year.

(b) Any employee who makes any written grievance, complaint, rebuttal, or any other written statement contesting any school district action or inaction to any administrator or board member shall immediately be given a copy of the grievance procedure.

(c) No employee shall be required to meet any grievance filing deadline of which he/she does not have actual notice.

Section 13.703. PRESENTMENT AND RESPONSE. (a) The grievance procedure shall provide for the presentment of the grievance at one or more administrative levels and to the board of trustees.

(b) The grievance procedure shall provide for reasonable deadlines for the presentment of the grievance at each administrative level.

(c) The grievance procedure shall provide for reasonable deadlines for a response in kind at each administrative level. The grievance shall be deemed denied at each level at the expiration of such deadline if there has not been a timely response in kind, unless such deadline has been extended in writing by mutual agreement.

(d) The employee shall be given reasonable advance notice of his/her opportunity for presentment to the board and of the board's consideration of the grievance.

(e) The grievance procedure shall provide for reasonable presentment of the grievance to the board of trustees by the employee of at least one-half hour. The grievance procedure shall provide the employee an opportunity to present witnesses, documents, and/or argument in support of his/her grievance during that time. In addition, the employee shall have the right to cross-examine witnesses against the grievance, and to respond to documents and argument against the grievance, beyond that time.

(f) The board shall respond to the grievance by either granting or denying each remedy requested by the employee.

Section 13.704. REPRESENTATION. The employee may be represented at every level of the grievance procedure by a representative of his/her choice.

Section 13.705. GROUP GRIEVANCES. Employees who are similarly situated may present a group grievance. The names of the grieving employees may be stated in the grievance, or the characteristics of the group may be described.

Section 13.706. RETALIATION PROHIBITED. No retaliatory action of any kind shall be taken by the board, a board member, or any administrator against an employee because of his/her participation in the grievance procedure as a grievant or otherwise.

Section 13.707. EXCLUSIONS. The grievance procedure may exclude matters covered by other board policies only if those other policies meet the requirements of this subchapter, including the provisions of Section 13.702.

Section 13.708. DEFINITIONS. (a) "Employee" means an individual employed by the school district at the time of the action grieved, including an employee who grieves the termination of his/her employment.

(b) "Wages, hours of work, or conditions of work" means any aspect of the employment relationship, including but not limited to assignment, reassignment, salary, wages, evaluations,

and discharge, but not including those matters to which chapter 13, subchapter C, chapter 13, subchapter H, and chapter 21, subchapter G of this code apply.

SECTION 4. Subchapter G, Chapter 21, Education Code, is amended to read as follows:

SUBCHAPTER G. TEACHERS' EMPLOYMENT CONTRACTS

Section 21.201. DEFINITIONS. As used in this subchapter, the following terms shall have the meaning ascribed to them in this section:

(1) "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor, or other full-time professional employee, except para-professional personnel, who is required to hold a valid certificate or teaching permit.

(2) "Board" and "board of trustees" means the governing board of a public school district.

(3) "School district" means any public school district in this state.

(4) "Term contract" means any contract of employment for a fixed term between the school district and a teacher.

(5) "Same professional capacity" means a position, including supervision of extracurricular activities, which is substantially equal in duties, responsibility, authority, certification, endorsement, education, and remuneration.

(6) "Independent hearing officer" means an individual who shall conduct the hearing.

Section 21.202. TEACHER EVALUATIONS. The board of trustees of each school district shall provide by written policy for the periodic written evaluation of each teacher in its employ at annual or more frequent intervals. Such evaluation shall be considered by the independent hearing officer and the board of trustees prior to any decision by the board not to renew the term contract of any teacher, to terminate the term contract of any teacher during the term of the contract, or to change the professional capacity of any teacher.

Section 21.203. NONRENEWAL OR TERMINATION OF TERM CONTRACTS; CHANGE OF PROFESSIONAL CAPACITY. (a) The board of trustees of each school district

may choose not to renew the employment of any teacher employed under a term contract effective at the end of the contract period, to terminate the term contract of any teacher during the term of the contract, or to change the professional capacity of any teacher.

(b) [The board of trustees of each school district shall establish policies consistent with this subchapter which shall establish reasons for nonrenewal.] A board of trustees may not nonrenew the term contract of any teacher, terminate the term contract of any teacher during the term of the contract, nor change the professional capacity of any teacher except for just cause. [Reasons] Just cause for nonrenewal [must] shall include the failure of a person required to take an examination under Section 13.047 of this code to perform satisfactorily on at least one examination under that section [on or before June 30, 1986].

(c) The board of trustees of each school district shall establish policies and procedures for receiving recommendations from its school administration for the nonrenewal of teacher term contracts, the termination of teacher term contracts during the term of the contract, and for the change of teachers' professional capacity, excepting only the general superintendent of schools.

Section 21.204. NOTICE.     (a) In the event the board of trustees receives a recommendation from its administration for nonrenewal, the board, after consideration of the written evaluations required by Section 21.202 of this subchapter and the reasons for the recommendation, shall, in its sole discretion, either reject the recommendation or shall give the teacher written notice of the proposed nonrenewal on or before April 1 preceding the end of the employment term fixed in the contract.

(b) In the event of failure to give such notice of proposed nonrenewal within the time herein specified, the board of trustees shall thereby elect to employ such employee in the same professional capacity [for the succeeding school year] until the teacher is lawfully discharged or until the teacher's professional capacity is lawfully changed.

(c) In the event the board of trustees receives a recommendation from its administration for the termination of a teacher's term contract during the term of the contract, or for a change in a teacher's professional capacity, the board, after consideration of the written evaluations

required by Section 21.202 of this subchapter and the reasons for the recommendation, shall, in its sole discretion, either reject the recommendation or shall give the teacher written notice of the proposed action.

[e] (d) The notice of proposed [nonrenewal] action required in this section shall contain a statement of all the reasons for such proposed action.

Section 21.205. HEARING. (a) If the teacher desires a hearing after receiving notice of the proposed [nonrenewal] action, the teacher shall notify the board of trustees in writing within 10 days after receiving the notice [of nonrenewal. The board shall provide for a] The hearing [to] shall be held [within 15] not less than forty-five days nor more than sixty days after [receiving] the board receives written notice from the teacher requesting a hearing, unless the teacher and the administration agree otherwise. Such hearing shall be closed unless an open hearing is requested by the employee.

(b) [The hearing shall be conducted in accordance with rules promulgated by the district. The board of trustees may designate a person to serve as an impartial hearing officer to develop a record for consideration by the board. The board shall make its decision based on a review of the record developed by the impartial hearing officer and on oral argument before the board of the teacher or the teacher's representative and the district's representative.] The hearing shall be conducted by an independent hearing officer. The independent hearing officer shall be chosen from a list of five individuals certified by the commissioner of education. The State Board of Education shall establish by rule the criteria for certification. The individuals certified by the commissioner of education shall not be current or former agents, representatives, or employees of any school district, school employee organization, or school board organization. Both the administration and the teacher shall have one opportunity each to reject the entire list, and to receive another list of five individuals certified by the commissioner. Both the administration and the teacher shall alternately strike two individuals each from the list of five, beginning with the administration. The individual remaining on the list shall serve as the independent hearing officer.

(c) The Texas Rules of Civil Procedure and the Texas Rules of Civil Evidence shall apply to the hearing and prehearing process. The independent hearing officer shall have the power to issue subpoenas for the attendance of witnesses and the production of documents at depositions and the hearing, effective within the State of Texas, and to swear witnesses. The hearing and any depositions shall be held within the geographical boundaries of the school district. The hearing shall be reported by a certified court reporter.

(d) At the hearing, the administration shall have the burden of proof by a preponderance of the evidence. The independent hearing officer shall make a written recommendation which shall include findings of fact and conclusions of law. The independent hearing officer's recommendation shall be issued within twenty days of the close of the hearing.

Section 21.206. DECISION OF BOARD. (a) If the teacher fails to request a hearing, the board shall take such action as it deems lawful and appropriate and shall notify the employee in writing of that action within 15 days of the expiration of the 10-day period for requesting a hearing.

(b) If the teacher requests a hearing, the board shall take such action as it deems lawful and appropriate and shall notify the teacher in writing of that action within 15 days following the [conclusion of the hearing] issuance of the independent hearing officer's recommendation. The board shall make its decision based on a review of the record and the recommendation developed by the independent hearing officer, and on oral argument before the board by the teacher or the teacher's representative and the administration's representative. The board shall either accept or reject the independent hearing officer's recommendation. The board may reject the recommendation only if it is arbitrary, capricious, unlawful or not supported by substantial evidence.

Section 21.207. APPEAL. (a) If the teacher is aggrieved by the decision of the board of trustees, he may appeal to the State Commissioner of Education pursuant to Section 11.13 of this code. The commissioner shall not hold a hearing, but shall make his decision based on a review of the record and the recommendation developed by the independent hearing officer. The

commissioner [may not substitute his judgment for that of the board of trustees, unless the decision below] may affirm a board's decision which rejected the independent hearing officer's recommendation only if the recommendation was arbitrary, capricious, unlawful, or not supported by substantial evidence. The commissioner may affirm a board's decision which accepted the independent hearing officer's recommendation only if the recommendation was not arbitrary, capricious, unlawful, or unsupported by substantial evidence.

(b) If the commissioner reverses the decision of the board, he shall order that the teacher shall be reinstated in his/her same professional capacity until the teacher is lawfully discharged or until the teacher's professional capacity is lawfully changed, or he shall order that the district pay the teacher one year of front pay in lieu of reinstatement. In addition, the commissioner shall order the district to pay the teacher back pay for the period of time between the effective date of the nonrenewal, termination, or change in professional capacity and the date of reinstatement.

[(b)] (c) Either party may appeal the commissioner's decision to a district court in Travis County.

Section 21.208. SUPERINTENDENTS. If a majority of the board of trustees of any school district shall determine that the term contract of the general superintendent of schools should be considered for nonrenewal, the provisions of this subchapter shall apply, except that there need not be a recommendation from the designated school administration.

Section 21.209. PROBATION. (a) The board of trustees of any school district may provide by written policy for a probationary period not to exceed the first two years of continuous employment in the district, except that the probationary period shall not exceed one year for a person who has been employed as a teacher in public education for at least five of the eight years prior to initial employment in the district. [The provisions of this subchapter shall not apply during such probationary period.]

(b) [A teacher dismissed for good cause from the school district in which the teacher was most recently employed may agree by written contract to a probationary period for the first two

years of continuous employment.] The provisions of this subchapter shall not apply to the nonrenewal of a teacher's term contract during or at the end of such probationary period. The provisions of this subchapter shall apply to the termination of a teacher's term contract during the term of the contract, and to a change in the professional capacity of a teacher, during or at the end of such probationary period.

[Section 21.210. DISCHARGE FOR CAUSE. Nothing in this subchapter shall prohibit a board of trustees from discharging a teacher for cause during the term of the contract.

[Section 21.211] Section 21.210. EXEMPTIONS. This subchapter does not apply to teachers who are employed under the provisions of the probationary or continuing contract law as set out in Subchapter C of Chapter 13 of this code.

SECTION 5. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

# Crosby ISD's Appendix

# TAB 11



**DAN MORALES**
ATTORNEY GENERAL

# Office of the Attorney General
## State of Texas

June 4, 1991

Honorable Ernestine V. Glossbrenner
Chairman
Public Education Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No.   DM- 27

Re:   Whether section 13.352(d) of the Texas Education Code authorizes a principal of a public school to reject teachers who are transferred by the school district, or voluntarily transfer, to his school; and whether the principal's approval authority extends to all school staff   (RQ-39)

Dear Ms. Glossbrenner:

You have requested clarification of section 13.352(d) of the Texas Education Code, which provides the following:

(d) Each principal shall:

(1) approve all teacher and staff appointments for that principal's campus from a pool of applicants selected by the district or of applicants who meet the hiring requirements established by the district, based on criteria developed by the principal after informal consultation with the faculty.

You explain that school districts are divided about the interpretation of this provision. "Some districts believe it to mean the principal must approve only newly hired teachers and that the law does not give the principal authority to reject (1)  teachers who are transferred to his/her campus by the school district administration or (2)  teachers whom the district approves for voluntary transfer to his/her campus."   You also ask whether the provision extends to the "assignment of all campus staff (including such positions as librarian, counselor, nurse, custodian)" or whether it applies only to instructional staff.

Section 13.352(d) was amended to its present form in 1990. A comparison of the pre- and post- amendment versions indicates that the purpose of the amendment was to give principals more control over their campuses with a view to greater principal accountability for campus conditions and student achievement. *See also* Bill Analysis S.B.1, 71st Leg., 6th C.S. (1990) "Accountability and Incentive Elements" (Campus Performance Objectives); Senate Educ. Comm. Synopsis of S.B.1, *Accountability and Incentive Elements of Senate Bill 1 Sixth Called Session* (Principals) (1990) at 3; HOUSE RESEARCH ORGANIZATION, WRAP UP OF THE 1990 SPECIAL SESSIONS ON PUBLIC EDUCATION, at 36-47 (July 31, 1990). Before amendment, section 13.352(d) merely authorized principals to "participate in the selection of teachers for that principal's campus." Nothing in the language of the statute suggests that the principal's authority to approve the appointment of a teacher to his campus is restricted to teachers newly hired by the district or that the principal is bound by transfer decisions of the district administration. Furthermore, the statute recognizes the principal's authority to make selection decisions based on criteria "developed by the principal after informal consultation with the faculty," i.e., criteria unique to the particular campus. The principal's authority to shape his campus through application of unique criteria would be diminished in derogation of section 13.352(d) if the school district could mandate the principal's acceptance of transferred teachers. We therefore find that the approval authority granted by the provision extends to teachers transferring within the district.

We believe that the language and history of section 13.352(d) also answer your second question. Prior to the 1990 amendment, the principal's role in the selection process for his campus extended only to the selection of teachers. The provision now establishes the principal's authority over "all teacher and staff appointments." This is clear authority for the principal to exercise his discretion in selecting individuals to fill staff as well as instructional positions on his campus.

## SUMMARY

Section 13.352(d) of the Texas Education Code grants authority to public school principals to approve all teacher and staff appointments on their

campuses. They are therefore not required to accept teachers approved for transfer to their campuses by the school district administration.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

Madeleine B. Johnson
Chair, Opinion Committee

Prepared by Faith Steinberg
Assistant Attorney General